Nov. Term, 1853.

NEILSON
v.
LAGOW.

---

The STATE *v.* BOYLE and Another.

Saturday, December 31.

(1) The judgment in another case of *The State* v. *Boyle et al.* was on this day affirmed, for the reasons given in this case.

---

NEILSON and Others *v.* LAGOW.

The Bank of *Vincennes* conveyed a tract of land to certain persons in trust to sell, under the direction and for the benefit of the *United States*, and to convey the same in fee simple to the purchaser and his heirs; but the deed did not, in terms, convey the land to the trustees and their "heirs." *Held*, notwithstanding, that the deed passed the fee to the trustees.

Nov. Term,
1853.

NEILSON
v.
LAGOW.

Saturday,
December 31.

APPEAL from the *Knox* Circuit Court.

PERKINS, J.—Disseizin by *Lagow* against *Neilson* and others to recover possession of a parcel of land situate in *Knox* county, known as the steam-mill tract. The general issue was pleaded. Trial by a jury, and verdict for the plaintiff. The Circuit Court rendered judgment upon the verdict. The cause was appealed to this Court, where that judgment was affirmed *sub silentio*. It was then removed to the Supreme Court of the *United States*, and there the judgment of this Court was reversed, and the cause remanded for further proceedings to be had here. The facts of the case are stated in 7 How. (U. S.) R. p. 772, and the opinion of the Court, with a statement of the case, is reported in 12 *id.* 98. A brief summary only of the facts of the case can now, therefore, be justified.

*Lagow* claims to have been the owner of the land in 1820, and to have conveyed it to the bank of *Vincennes*. The bank conveyed it to certain persons in trust to sell, under the direction and for the benefit of the *United States*, to whom the bank had become indebted, and to convey the same by deed in fee simple to the purchaser and his heirs; but the deed to said trustees by the bank did not contain the word "heirs." (1) *Neilson* was in possession under said trustees, who were all dead when this suit was commenced. The bank of *Vincennes*, to which *Lagow* conveyed, had forfeited its charter and been dissolved.

Upon these facts *Lagow* contends that the deed of said bank to the trustees, it not containing the word heirs, conveyed but a life estate; that, hence, on the death of all of said trustees, the land reverted to the bank, and, it being dissolved, reverted to him, the grantor of the bank.

He assumes another ground also. He insists that said deed from the bank to the trustees was void by virtue of the seventh section of the act of congress of *May* 1, 1820, (3 stat. at large 568) which enacts, "that no land shall be purchased on account of the *United States*, except under a law authorizing such purchase;" and that, hence, the

title remained in the bank, notwithstanding said deed, and reverted to him on its dissolution.

These two questions are, therefore, presented:

1. Was the deed from the bank to trustees for the United States void under the act of congress of May 1, 1820?

2. If not, did it convey more than a life estate to said trustees?

A decision by this Court against the deed on the ground that it was void under said act of congress, would be one that the Supreme Court of the United States would have jurisdiction to review; while, on the other hand, a decision that said deed conveyed but a life estate would not present a question of which that Court could take jurisdiction; yet either of these decisions would have the effect to give the land in question to Lagow.

On this ground Lagow's counsel argued in the Supreme Court of the United States that that Court ought to affirm the judgment heretofore rendered in the cause by this Court, inasmuch as it did not appear, no written opinion having been given, upon which of said questions the Court did decide it. But that Court held that they would look into the record and see what questions it presented to this Court for decision; and declared that, in doing so, they could come to no other conclusion than that this Court must have held the deed in question void under the act of congress, because the law was plain enough that, if the deed was valid, it conveyed a fee-simple estate; and the Court then proceeded to decide that said deed was not void under said act of congress, as that act should not be construed to prohibit the acquisition of the equitable or legal title to land when taken as security for a debt. This latter point is, consequently, finally settled.

It only remains, therefore, for this Court to make a decision as to the estate conveyed by the deed of the bank to the trustees for the benefit of the United States. It has long been settled that a fee simple may be passed in lands by devise without the use of the word heirs, the intention of the devisor, as drawn from the whole will, in

such case, governing; and, further, that upon a devise to trustees they will take an estate commensurate with the interest required to execute the trust, which, indeed, is but the application to such a case of the general principle that, in wills, the intention governs. The law, however, as the general rule, has been otherwise in regard to conveyances by deed. They have been taken to convey no greater estate than was expressed. It is not a principle, we admit, that is favorably regarded in this country; and it has been set aside in some of the states by legislation. It originated in the feudal policy which sought to prevent, as far as possible, the transfer of lands from the families possessing them, and to give the lord the power of designating the tenant who might be their occupant. But still it has been an established principle, and we do not find that the application of it has been withheld from conveyances in trust. Mr. *Hill*, in his late work on trustees, page 251, says, "There does not appear to be any decided case in which an estate, given by *deed* to trustees *without any words of limitation*, has been constructively *enlarged* into a fee (as in the case of a devise by will) in consequence of the nature and purposes of the trust; as from a direction for them to sell or convey; although there is a *dictum* of Lord *Hardwicke* directly in favor of this construction." That *dictum* is in *Villiers* v. *Villiers*, 2 Atk. 72. Mr. *Hill* speaks, of course, in reference to the *English* authorities.

There are *American* decisions that thus, by construction, enlarge an estate granted by a deed in trust, into a fee. The courts of *New-York* and *Massachusetts* have established the doctrine in those states, and the Supreme Court of the *United States* has, in the case under consideration, followed and sanctioned it. The doctrine is applied at law as well as in chancery. It was so applied in this case by the Supreme Court of the *United States*, and see *Welch* v. *Allen*, 21 Wend. 147.—*Gould* v. *Lamb*, 11 Met. 84.— *Fisher* v. *Fields*, 10 Johns. 495. In this latter case, chancellor *Kent*, after observing that it had frequently been thus ruled in chancery, but without distinguishing whether

upon deeds or devises, says, the Court of King's Bench, in *England*, in the time of Lord *Mansfield*, "made the same decision at law." That decision was made in the ejectment case of *Oates* v. *Cooke*, 3 Burr. 1684, and arose upon a devise, and not upon a deed.

The rule as declared in these *American* decisions is undoubtedly the better one, and we adopt it, and hold that a fee passed to the trustees in the case before us.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*C. Cushing, R. W. Thompson, D. Mace* and *H. O'Neal,* for the appellants.

*S. Judah,* for the appellee.

(1) The record shows that neither the habendum nor the grant in the deed contained the word heirs.