Ev. s. 662.— *Willoughby* v. *Jenks*, 20 Wend. 96.—3 Kent, 8th ed. 564.— The State v. *Carver*, 5 Strobh. 217.—*Simons* v. *Cornell*, 1 R. I. 519.— *Westfall* v. *Hunt, ante*, 174. It must be established either by user or length of time, or by an act of the owner so unequivocal in its nature as to require no time to warrant a presumption of a grant. *Livingston* v. *The Mayor*, 8 Wend. 85.—11 East, 376.—1 Burr. 133. A grant may be by deed, or by the acts of the owner. 2 Bouv. Inst. 185. It must be made by the owner in fee. 2 Greenl. Ev. s. 663.— *Wood* v. *Veal*, 5 Barn. and Ald. 454. The party asserting it must allege its true character and extent, the conditions and limitations imposed, and recover, if at all, according to such allegations. 3 Kent, 563, b.—*Lithbridge* v. *Winter*, 1 Camp. 263, note.—*Marquis of Stafford* v. *Coyney*, 7 B. and C. 257.—*Gowen* v. *Phil. Ex. Co.* 5 Watts and Serg. 141.—*Poole* v. *Huskinson*, 11 Mees. and Welsb. 827.

The claim of the city, so far as it is depends upon user, is in the nature of an easement in, or servitude imposed upon, the land in question by the public; and such easement or servitude must have been of 20 years duration. To render the enjoyment of any easement for 20 years a presumption *juris et jure*, or conclusive evidence of right, it must have been continued, uninterrupted or pacific, and adverse—that is, under a claim of right, with the implied acquiescence of the owner. 2 Greenl. Ev. ss. 538, 539.—*Pearsall* v. *Post*, 20 Wend. 111 and authorities there cited.—3 Kent, 552.— *Corning* v. *Gould*, 16 Wend. 531.— *Colvin* v. *Burnet*, 17 Wend. 564.—*Sargent* v. *Ballard*, 9 Pick. 251, 255.—*Shumway* v. *Simons*, 1 Verm. R. 53, 57.—*Mitchell* v. *Walker*, 2 Aiken, 266 to 271. This case is very different from those cases where terms are used importing the purpose of the donor—as in *Beatty* v. *Kurtz*, 2 Pet. 566, where the lot was designated on the plat by the words "For the *Lutheran Church*;" or in *McLaughlin* v. *Stevens*, 18 Ohio R. 94, where the ground in dispute had been leased and used for wharves. And so in *New Orleans* v. *The United States; Le Clerq* v. *Gallipolis; Huber* v. *Gazley*, &c., cited in the appellant's brief.

Nov. Term,

**1856.**

WICKERSHAM

v.

BIELS.

8   387
133  168

---

# WICKERSHAM and Others *v.* BILLS and Others.

*A. B.* and *C.* granted to *E.* the right to use and improve a mill-dam and race, with certain appurtenant privileges, stipulating as a condition to such grant, that *E.* should build and put into operation a grist mill, and that if he, or they who might hold under him, should fail to put such mill into operation, or should vacate the same, or fail to repair it

when necessary, for a great length of time, then the privileges granted should revert to the grantors. The instrument by which this grant was made refers to a dam and race already existing on the premises, (the user of which is granted to *E.*) and to a deed executed concurrently with the instrument, whereby *C.* conveyèd to *E.* the fee simple of 80 acres of land on which was situated a saw-mill, which, it seems, had been run by means of the last said dam and race.

*Held,* that the heirs of *E.* should be considered as holding under him, within the intention of the parties.

*Held,* also, that the conveyance by *C.* of the saw-mill and site carried with it the use of the head of water necessary to its enjoyment, with all incidents and appurtenances, so far as the right to convey the same existed in the grantor.

*Held,* also, that a fee simple may be created by words of reference to a deed conveying a fee simple, without the use of the word "heirs," where the intention is clear.

*Held,* also, that the reference in the instrument by which the water privileges were granted, to the deed conveying a fee simple title to the mill and site, and to the objects for which that conveyance was made, enlarged the grant to a fee simple.

APPEAL from the *Henry* Circuit Court.

PERKINS, J.—Suit by *Bills* and others, heirs at law of *John Bills,* deceased, against *Wickersham* and others, for disturbing possession of a mill and the water privilege. The defendants answered, alleging that the ancestor of the plaintiffs held the mill, &c., of the defendants for life only, that he was dead, and that hence, the mill, &c., had reverted to the defendants; who, of right, might take possession, and they set forth an instrument in writing, under seal, as follows, as establishing the rights respectively of the parties:

"Articles of agreement made and entered into this first day of *May,* 1841, between *John Bills,* of the county of *Henry,* and State of *Indiana,* of the one part, and *Abel Wickersham, Samuel B. Binford,* and *James S. Butler,* of the county and State aforesaid, of the other part, witnesseth, that, whereas the said *Bills* has this day purchased a tract of land from the said *James S. Butler,* upon which tract of land he, the said *Bills,* is desirous of building a water-mill and other machinery; and inasmuch as the necessary accommodations on the part of the said *Bills* to carry his object and desires into effect

will in some measure, affect the rights of said *Wicker-sham*, *Binford*, and *Butler*; for and in consideration of the sum of one dollar, and the advantage of said machinery, they agree severally as follows, to wit: The said *Wickersham* agrees with and grants to the said *Bills*, the privilege of improving and extending a milldam on the land of him, the said *Wickersham*, on the west side of *Flat Rock*, agreeing with and granting to the said *Bills* the right to extend the same across the low land and some bayous, so as, however, not to overflow said low land at a common stage of low water at or near where *Butler's* dam now stands, giving and granting to the said *Bills* the right to use any earth or any other materials not of a valuable nature which the said *Bills* may want in making or repairing said dam; also the right to pass and repass with wagon or wagons and teams at all times for the making and repairing said dam. The said *Binford* agrees with and grants to the said *Bills* the right and privilege of building and repairing a dam for the purposes aforesaid across the bed of the said stream on the land of him, the said *Binford*, at the place before designated, together with the privilege of continuing the race where it is now situated, granting to the said *Bills* the right of a gangway for teams and hands to the said dam in some convenient way, and from the said dam the privilege of going down and up the race for the purpose of repairing and widening, if necessary. And as to the said *Butler*, he also agrees with the said *Bills* that he shall have the free privilege to continue the said race where it now is, together with the privilege of widening, mending, and repairing the same, as it may be necessary, with the right to use teams along the said race for the purposes aforesaid.

"It is understood between all the parties to this contract, that the said *Bills* is, within a reasonable time, to commence, and put into operation, a grist-mill, as is above contemplated. But if he, or they who may hereafter hold under him, fails or refuses to put said mill

into operation, or after being put into operation, shall at any time vacate the same, or fail to repair when necessary, for a long space of time, then the privilege hereby granted to the said *Bills* shall cease, and revert back to the grantors.

"Given under our hands and seals, the day and year above written."

Attested, signed, and sealed, &c.

Concurrently with the execution of the foregoing instrument, *Butler* sold the fee simple of eighty acres of land to *Bills*, being the land referred to in said agreement, "on which there then was situate a saw-mill," to which land *Butler* made a deed to *Bills*, his heirs, &c.

The answer, setting up the foregoing matters in defense, was demurred to, the demurrer sustained, and, the defendants refusing to answer further, interlocutory judgment was rendered against them, damages were assessed, and final judgment entered therefor.

The question is, what estate was conveyed by the agreement above recited? That it plainly conveyed the right of enjoyment to *Bills* and those who might hold under him, there can, we think, be no doubt. And we think it equally clear that his heirs should be considered as holding under him, within the intention of the parties. This being the case, the judgment below was right, and must be affirmed. But there are other principles which seem to be applicable to this case, and to which it may be proper to allude.

*Butler*, one of the parties to the instrument recited, simultaneously with its execution, made a sale to *Bills* of a mill and mill-site—the same mentioned in said agreement. Now, "the grant of a mill carries with it the use of the head of water necessary to its enjoyment, with all incidents and appurtenances, as far as the right to convey to this extent existed in the grantor." 3 Kent, 440, note. So far as *Butler* was concerned, then, the grant in the agreement was but expressing formally what the law actually effected by implication, and that implication carried the rights in fee simple (1).

Again, though it was the general doctrine at common law—a doctrine now abrogated by 1 R. S. of *Indiana*, p. 234, s. 14—that the word heirs was necessary to carry a fee, yet there were many exceptions to it. See *Neilson* v. *Lagow*, 4 Ind. R. 607. Judge *Wilde*, in *Gould et al.* v. *Lamb et al.*, 11 Met. 84, enumerates these exceptions, and closes the enumeration thus: "And undoubtedly a fee simple may be created by other words of reference to deeds and instruments [conveying fee simples] without the use of the word 'heirs,' where the intention appears clear." And on this exception, the case in which the opinion quoted from was delivered, was decided. See also *Kenworthy* v. *Tullis*, 3 Ind. R. 96 (2).

Here, in the instrument in question, is an express reference to a fee simple conveyance, and to the objects for which it was made,—a conveyance made simultaneously with said instrument,—and the instrument itself was executed expressly for the purpose of enabling the grantor in the conveyance to accomplish the objects for which it was made, and to enjoy fully the rights conveyed.

It would seem that this principle would enlarge the grant in the instrument involved, to a fee simple.

*Per Curiam.*—The judgment is affirmed with 10 per cent. damages and costs.

*E. Johnson*, *O. P. Morton*, *W. Grose*, and *G. A. Johnson*, for the appellants.

*C. H. Test*, *J. T. Elliott*, and *J. H. Mellett*, for the appellees.

---

(1) The right to flow water over the land of another, is an incorporeal hereditament, and can only be granted by deed. *Bell* v. *Elliott*, 5 Blackf. 113.—*Moore* v. *Sinks*, 2 Ind R. 257.

But if land be conveyed by metes and bounds, and there be a mill upon it with a race-way running into other land of the grantor, the water passes as appurtenant to the mill, through the whole extent of the race-way. Angell on Watercourses, 39, 40, 43.—4 Kent, 518.—3 Phil, Ev. 1403.

Nov. Term,
1856.

(2) Contemporaneous writings, connected by direct reference, are construed as one instrument, and may vary the legal effect and import of one another.  3 Phil. Ev. pp. 1421, 1425, note 858; pp. 1461, 1462, note 976.