Nicholson *et al. v.* Caress *et al.*

NICHOLSON ET AL. *v.* CARESS ET AL.

CONVEYANCE.—*Construction of Grant.*—Prior to the revised statutes of 1852, a conveyance containing no words of limitation or inheritance gave to the grantee an estate for life only.

SAME.—In construing the language of a grant, that construction is to be given which is most favorable to the grantee. Where a grant was made prior to the revision of 1852, to one, with no·other words of limitation, he will be entitled to an estate during his own life, if the estate of the grantor would allow him to convey so much. To create an estate for the life of the grantor, or for the life of another than the grantee, words indicating such purpose must be used.

SAME.—*Joint Tenancy.*—By the revised statutes, both of 1843 and of 1852, a conveyance to two or more persons creates in the grantees a tenancy in common, except in the instances where the statute expressly provides that it shall be a joint tenancy, unless it shall be expressed therein that the grantees shall hold in joint tenancy, or it shall manifestly appear from the exact words of the instrument that it was intended to create an estate in joint tenancy. The intention cannot be gathered from the circumstances surrounding the grantor and attendant upon the execution of the instrument.

SAME.—*Deed Without Covenants.*—*Effect of.*—A deed of bargain and sale, or by way of release or quitclaim, conveys all the present estate of the grantor, but binds no after-acquired estate. There being no covenants of title, there is no estoppel.

From the Washington Circuit Court.

*S. B. Voyles, J. Baynes, J. W. Gordon, T. M. Browne,* and *J. N. Kimball,* for appellants.

*T. L. Collins* and *A. B. Collins,* for appellees.

BUSKIRK, J.—This was an action by the appellants against the appellees, to obtain partition of the real estate described in the complaint. The complaint sets forth the interests of the parties, together with the deed upon which the appellants in part rely for their title. A demurrer was sustained to the complaint below, and this ruling is assigned for error and presents the only question arising in the record.

The complaint shows that in the year 1847, one Thomas Nicholson was the owner in fee of the land in controversy; that on the 24th day of March, 1847, he conveyed by deed

such real estate to his two sons, Peter and Thomas B. A. Nicholson, in consideration that they would support him for and during his life and bury him after his death, which deed was duly acknowledged and recorded; that in the year 1848, the grantor, Thomas Nicholson, departed this life, intestate, leaving the appellants and the grantees his heirs at law. The grantees, Peter and Thomas B. A. Nicholson, remained in possession of the land until 1850, when they sold and conveyed it to Peter Caress; that Peter Caress died in the year 1852, intestate, and such real estate was sold by the administrator of his estate to pay the debts thereof, and the appellees derive their title through Peter Caress, and are in possession and claim to be the absolute owners in fee; that in the year 1855, Peter Nicholson, one of the grantees of the said Thomas Nicholson departed this life intestate; that the other grantee, Thomas B. A. Nicholson, is alive.

As the questions in the case depend almost entirely upon the construction which ought to be placed upon the deed from Thomas Nicholson to Peter and Thomas B. A. Nicholson, we set out a copy of it, which is as follows:

"Be it known to all men that I; Thomas Nicholson, of the State of Indiana, Washington county, and in Brown township, and in the year of our Lord one thousand eight hundred and forty-seven, being at home, in my right mind, and in good health, and without any *coershun* from any person or fraudulently to withhold the right from any one, do hereby deed and convey unto my sons, Peter and Thomas Bramwell A. Nicholson, all my personal and real estate, except that portion coming from Childers, which is to be divided with the other brothers and sisters if I should *dye* before it is collected, but all the rest of the estate I do hereby convey unto Peter and Thomas B. A. Nicholson, upon the condition of the maintenance through life, and burial after death, of my *boddy*, which maintenance is to *cosist* of suitable clothing for public and private life and ordinary boarding, the plat of ground," etc. (here follows description of the real estate). "To have and to hold the same against all claim,

or claims whatever and singular, the title, interest, and claim in and unto said Peter and Thomas B. A. Nicholson forever. In testimony whereof we set our hands and seals, this twenty-fourth day of March, one thousand eight hundred and forty-seven. THOMAS NICHOLSON, [Seal.]"

The counsel for appellants, in their brief, admit that Peter and Thomas B. A. Nicholson fully performed the conditions named in the deed and paid the consideration agreed upon for the land, but they contend that the deed only conveyed to them an estate for life; that the fee remained in the grantor and on his death descended to his heirs at law; that the grantees held the estate or interest conveyed by such deed as tenants in common for life, and upon the death of Peter Nicholson, the title to one undivided half descended to the plaintiffs as the heirs of Thomas Nicholson, and that they have a right to partition of the said real estate; and that all the interest which appellees have is the life estate during the life of Thomas B. A. Nicholson and the interest in fee which Peter and Thomas B. A. Nicholson inherited from their father, and which was conveyed by their deed to Peter Caress. In other words, the rights of the appellants are attempted to be maintained upon the ground that as the deed from Thomas to Peter and Thomas B. A. Nicholson did not contain the word heirs or any equivalent words, it only conveyed an estate for life.

Counsel for appellees admit that such was the rule at common law and under the statutes of this State prior to the revision of 1843, but it is earnestly contended that, under the revised statutes of 1843 and 1852, a fee can be conveyed without the use of the word " heirs" or any equivalent words, and that the deed in question conveyed to the grantees an estate in fee simple. It is further insisted, that, conceding that the deed only conveyed an estate for life, the grantees held the same as joint tenants, and upon the death of Peter his right survived to Thomas B. A. Nicholson, and that the life estate will not terminate until the death of Thomas.

It was well settled, at common law, that words of grant to a man, without words of limitation or inheritance, were understood to create in him a life estate, and that the word "heirs" was indispensable to create an estate of inheritance. Washburn on Real Property, vol. 1, p. 71, 3d ed., states the rule thus:

"53. The origin of the use of 'heirs' in creating an estate in fee by grant has already been explained, though it has obviously become a mere arbitrary rule. Still, unless changed by statute, it is as imperative, as a rule of law, now as ever. No synonym will supply its place. Even a grant to one and his 'heir,' will give him only a life estate, or to one 'or his heirs,' or to one 'and his heirs during the life of another,' or to one 'forever,' or to one 'and his assigns forever,' and the words 'forever,' or 'assigns,' have no effect at this day in limiting or defining what estate is granted. So to one 'and his successors,' or to one, 'his successors and assigns,' is a life estate only, although coupled with a power to sell and convey a fee, or to one and his 'seed,' or 'his offspring,' or to one 'and the issue of his body,' or to one in 'fee simple,' or to one, 'his executors, administrators and assigns.' No circumlocution has ever been held sufficient to create a fee." See *Nelson* v. *Davis*, 35 Ind. 474.

The case of *Kenworthy* v. *Tullis*, 3 Ind. 96, supports the doctrine above laid down. The cases of *Neilson* v. *Lagow*, 4 Ind. 607, *Wickersham* v. *Bills*, 8 Ind. 387, and *Gould* v. *Lamb*, 11 Met. 84, are clearly distinguishable from the present case. In such cases, the deeds were deeds in trust, and it was held that words of reference to other deeds and instruments which contained words of inheritance would create a fee without the use of the word "heirs" in the trust deeds.

The deed in question was one of bargain and sale. It was executed in 1847. The common law rule above stated was in force at the time of its execution and must govern in its construction. The revised statutes of 1843 did not change the rule as it existed at common law. The rule was changed by the revision of 1852. It is provided, by the fourteenth sec-

tion of " an act concerning real property and the alienation thereof" (approved May 6th, 1852), that " it shall not be necessary to use the words 'heirs and assigns of the grantee', to create in the grantee an estate of inheritance; and if it be the intention of the grantor to convey any lesser estate, it shall be so expressed in the deed." 1 G. & H. 260.

We are very clearly of opinion that the deed in question did not convey to the grantees an estate of inheritance, but only an estate for life.

We proceed to inquire whether such estate was during the life of the grantor or grantees. It is a settled rule, that in construing the language of a grant, that construction is to be given which is most favorable to the grantee. Where a grant is made to one with no other words of limitation, he will be entitled to an estate during his own life, if the estate of the grantor will allow him to convey such estate. To create an estate for the life of the grantor or for the life of another than the grantee, words indicating such purpose must be used. 1 Washb. Real Prop. 102, 103.

In the present case, the grantor, at the date of the deed, was the owner in fee of the land in question, and it was conveyed to the grantees without words of limitation, and it results that such conveyance created an estate for the lives of the grantees.

This leaves for our decision the question whether the grantees in the deed in question held the estate created thereby as tenants in common or as joint tenants. At the date of the deed, there was in existence the following sections of the revision of 1843:

" Sec. 18. All conveyances and devises of land, or of any interest therein, made to two or more persons, except as provided in the next following section, shall be construed to create estates in common and not in joint tenancy; unless it shall be expressed therein that the grantees or devisees shall hold the same in joint tenancy and to the survivor of them, or it shall manifestly appear, from the tenor of the instru-

ment, that it was intended to create an estate in joint tenancy.

"Sec. 19. The preceding section shall not apply to mortgages nor to conveyances in trust, nor when made to husband and wife ; and every estate vested in executors, or trustees as such, shall be held by them in joint tenancy." R. S. 1843, p. 417.

Sections 7 and 8 of the act of 1852 in relation to conveyances are exact copies of sections 18 and 19 above quoted from the revision of 1843. This court, in *Chandler* v. *Cheney*, 37 Ind. 391, in speaking of sections 7 and 8, uses this language :

"To create a joint tenancy, under the above sections, between persons who are not husband and wife, it is necessary that the intention shall be expressly declared in the instrument, or it must manifestly appear from the tenor of the instrument."

It should be observed that there are two clauses to the latter portion of section 18. In the first clause, the intention is to be expressed in the instrument, while in the other the intention is to be gathered from the tenor of the instrument. By the word "tenor" is meant the exact words of the instrument. We think the true construction of the section is, that all conveyances and devises of land or of any interest therein, to two or more persons, with the exception stated, shall be construed to create estates in common, and not in joint tenancy, unless it shall be expressed therein that the grantees or devisees shall hold the same in joint tenancy, or it shall appear from what is expressed in the instrument that it was intended to create an estate in joint tenancy. The purpose to create a joint tenancy must appear from the instrument in one or the other of the modes above indicated. We cannot look to the circumstances surrounding the grantor and attendant upon the execution of the instrument, to ascertain his intention. The intention must appear from an express declaration in the instrument that the grantees or devisees shall hold as joint tenants, or from the words used

in the instrument. In the deed under examination, it is not expressed that the grantees shall hold the land as joint tenants, nor does such intention manifestly appear from the language employed. We think the grantees held the land as tenants in common, and that upon the death of Peter his estate for life terminated, and the estate in fee descended to and vested in the heirs at law of the grantor, Thomas Nicholson. Peter having executed a deed to Peter Caress, it is claimed that the estate which he acquired by inheritance from his father passed to his grantee and his assigns. This will depend upon the character of the deed. The general principle is well settled, that a grantor, conveying by deed of bargain and sale and by way of release or quitclaim of all his right and title to a tract of land, if made in good faith and without any fraudulent representations, is not responsible for the goodness of the title beyond the covenants in his deed; and that a deed of this character purports to convey, and is understood to convey, nothing more than the interest or estate of which the grantor is seized or possessed at the time, and does not operate to pass or bind an interest not then in existence. The principle deducible from the authorities seems to be, that, whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seized or possessed of a particular estate in the premises, and which estate the deed purports to convey, or, what is the same thing, if the seizin or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterward denying that he was so seized and possessed at the time he made the conveyance. The estoppel works upon the estate, and binds an after-acquired title as between parties and privies. The reason is, that the estate thus affirmed to be in the party at the time of the conveyance must necessarily have influenced the grantee in making the purchase, and hence the grantor and those in privity with him, in

good faith and fair dealing, should forever thereafter be precluded from gainsaying it. *Shumaker* v. *Johnson*, 35 Ind. 33, and authorities cited.

The deed from Peter and Thomas B. A. Nicholson to Peter Caress is not set out in the record, and we are unable to determine its character from the averments in the complaint. The only averment in the complaint on this point is, that Peter and Thomas B. A. Nicholson conveyed their interest in said lands to Peter Caress. The inference to be drawn from the language used is, that they only purported to convey such interest as they possessed, and if such is the case the deed would not operate to pass an after-acquired title. But on this point we decide nothing, as the appellees will have the opportunity of setting up their title by answer in the court below.

The conveyance from Thomas Nicholson, deceased, vested in Thomas B. A. Nicholson an estate for life in one undivided half of the premises in dispute, and this estate continues and will continue during his life, and he will hold such estate as a tenant in common with the other owners. In a joint tenancy, either tenant may convey his share to a co-tenant or even to a stranger, which conveyance severs the joint tenancy, and where the conveyance is to a co-joint tenant he becomes the owner of the entire estate, and where the conveyance is to a stranger, he becomes a tenant in common with the other co-tenant. *Chandler* v. *Cheney*, 37 Ind. 371. The death of one joint tenant terminates the joint tenancy, but the share of the one who dies does not descend to and vest in his heirs at law, but under the common law doctrine of survivorship, which is in force in this State, whenever a joint tenancy is created under and in pursuance of our statute, his share would survive to and vest in his former co-tenant, who would hold the entire estate. So, if the deed in question had created a joint tenancy for life, the share of Peter upon his death would have survived to and vested in his co-tenant, who would have held the entire estate during his life, but as the grantees of such deed held the estate for

life as tenants in common, the right of survivorship did not exist; and the life estate of Peter in the one undivided half of such premises having been terminated by his death, the fee simple in such portion descended to and vested in the heirs at law of the said Thomas Nicholson, the original grantor, or their grantees when the conveyance was of such a character as to pass an after-acquired title.

In our opinion, the complaint was good, and the court erred in sustaining the demurrer to it.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to overrule the demurrer to the complaint, and for further proceedings in accordance with this opinion.