Nicholson *et al. v.* Caress.

---

## NICHOLSON ET AL. *v.* CARESS.

PARTITION.—*Statute of Limitations.—Tenants in Common.—Adverse Possession.*—Where A. became a tenant in fee simple of an undivided portion of certain land in 1848, B. and C., who at the same time became tenants in fee simple of the remaining undivided portion, being already in possession of the whole as tenants thereof in common for life, and after conveyance to D., by B. and C., of their interests in said land, B. died in 1855, and, in 1873, C. still living, A. commenced suit for partition against E., in possession and claiming under said conveyance to D.,

Held, that A.'s cause of action for partition did not accrue till the death of B.

Held, also, that the tenancy in common of the parties, which was alleged in the complaint, not being denied, the statute of limitations could not affect the right of A. to have partition.

Held, also, that the possession of said life tenants, B. and C., and their grantee, under the instrument creating the life tenancy, could not be adverse to the remainder-man or reversioner, before the expiration of the life or lives for which the estate was held.

CONVEYANCE.—*Contract to Convey.— Words of Inheritance.*—In 1847, and until May 6th, 1853, the common-law doctrine prevailed in this State, that, in any deed or contract for the conveyance of real estate, words of inheritance were necessary to show that an estate of inheritance was intended to be created.

PARTITION.—*Advancements.*—Where A. conveyed certain land to his sons B. and C. by a deed which, by its terms, created a life estate therein in B. and C.

Held, in an action for partition, brought after the deaths of A. and B., by A.'s heirs other than B. and C., against the grantee of B. and C., that, if A., in his lifetime, advanced to all his heirs except B. and C., in personal and real estate, the full share and interest that would have been due to each of them at A.'s death, as his heirs, and if said advancements were accepted by them in full of all their interest in A.'s estate, this would constitute a good defence to said action for partition.

PLEADING.—*Reformation of Deed.— Mutual Mistake.*—A complaint to reform a deed of conveyance of land, on the ground of a mistake, in the omis-

sion therefrom of certain words of inheritance, whereby an estate for life was created, when it was the intention of the parties to create an estate in fee simple, is bad on demurrer, if it contains no averment to the effect, that, at the time of the execution of the deed, the grantor and grantee were both ignorant of its precise contents, or of the omission therefrom of the alleged words of inheritance.

From the Washington Circuit Court.

*S. B. Voyles, H. Heffren* and *D. M. Alspaugh,* for appellants.

*T. L. Collins* and *A. B. Collins,* for appellee.

Howk, J.—This is the second time this cause has been before this court. When it was here before, the only question arising in the record was the sufficiency of the appellants' complaint; and it was then held by this court, that the complaint was good. *Nicholson* v. *Caress,* 45 Ind. 479.

We approve of, and adhere to, the decision then rendered. The action was brought by the appellants, against the appellee and others, to obtain partition of certain real estate in Washington county. The principal question considered by this court, when the case was here before, was the construction which ought to be given to a certain deed, set out in appellants' complaint. This deed bore date on the 24th day of March, 1847. It was executed by Thomas Nicholson, who was then the owner and in the possession of the real estate of which partition was sought for in this action. By this deed, the said Thomas Nicholson conveyed said real estate to his sons Peter and Thomas B. A Nicholson, upon the condition of his maintenance through life, and his burial after death. The *habendum* of the deed was as follows: "To have and to hold the same against all claim or claims whatever and singular, the title, interest and claim in and unto the said Peter and Thomas B. A. Nicholson, forever."·

As construed by this court, by this deed, only an estate for life was conveyed to said Peter and Thomas B. A. Nicholson, in said real estate. After the execution of

said deed, to wit, on the 11th day of January, 1848, the said Thomas Nicholson, the grantor therein, died intestate, leaving the said Peter and Thomas B. A. Nicholson, and the appellants in this action, as his only children and heirs at law. After his death, the said Peter and Thomas B. A. Nicholson continued in possession of said real estate, until the 21st day of October, 1850, on which day they conveyed their interest in said premises to one Peter Caress. The appellants alleged in their complaint, that each of them was the owner, in fee simple, of a certain specified share of said real estate, and that the appellee was the owner, in fee simple, of the undivided two-sevenths, and of an estate for the life of said Thomas B. A Nicholson in the undivided one-half, of said real estate. And it was further alleged in said complaint, that the said Peter Nicholson had died in 1855, and that at his death the appellee's estate for the life of said Peter Nicholson, in the other undivided one-half of said real estate, had terminated. The appellants claimed, that each of them, at the death of said Peter Nicholson, became entitled to the possession of the one-half of his or her share of said real estate; while they conceded, that the appellee was entitled to the possession of the other half of each of the said shares, by reason of his estate therein for the life of said Thomas B. A. Nicholson.

When the cause was remanded, all the defendants named in the complaint, except the appellee, filed a disclaimer. The appellee answered in nine paragraphs, and filed his cross-complaint in three paragraphs. The appellants demurred separately to each of the paragraphs, except the first, of appellee's answer, for the alleged insufficiency of the facts therein to constitute a defence to their action; which demurrers were sustained as to the second, third, fourth and eighth paragraphs, but were severally overruled as to the fifth, sixth, seventh and ninth paragraphs of said answer, to which decisions of the court below, in overruling said demurrers, the appellants ex-

cepted. The appellants also demurred to each of the paragraphs of appellee's cross-complaint, for the alleged want of facts therein to constitute a cause of action ; which demurrers were sustained as to the first, but overruled as to the second and third paragraphs of said cross-complaint, and the appellants saved exceptions to the overruling of their demurrers.

The appellants replied by a general denial to each of the fifth, sixth, seventh and ninth paragraphs of appellee's answer; and, for a further reply to said ninth paragraph, the appellants alleged that the cause of action therein stated, as a bar to their suit, did not accrue within twenty years next before the bringing of this suit. And the appellants answered the second and third paragraphs of the appellee's cross-complaint in two paragraphs, as follows : 1. A general denial ; and, 2. That the cause of action therein stated did not accrue within twenty years next before the bringing of the suit.

The cause was tried by the court below, without a jury, and a finding made in favor of the appellee on all the issues joined, except on the ninth paragraph of the answer. And, on written causes filed, the appellants moved the court below for a new trial, which motion was overruled, and appellants excepted, and judgment was rendered for the appellee.

In this court, the appellants have assigned, as alleged errors, the several decisions of the court below, in overruling their demurrers to the said several paragraphs of appellee's answer and cross-complaint, and also their motion for a new trial.

We will first consider the alleged errors of the court below, in overruling appellants' demurrers ; and, in so doing, we will take up and dispose of the several paragraphs demurred to, in their enumerated order.

The appellee alleged, in substance, in the fifth paragraph of his answer, that the cause of action, mentioned

in appellants' complaint, did not accrue within twenty years next before the commencement of this suit.

This action was commenced, in the court below, on the 27th day of February, 1873. The appellants claim in this case as the heirs at law of Thomas Nicholson, who died on the 11th day of January, 1848. At the death of said Thomas Nicholson, however, his two sons Peter and Thomas B. A. Nicholson were each the owner of an undivided moiety, under the aforementioned deed, of the said real estate, for his own life. And, of course, the appellants had no possessory right to any interest in said real estate until the death of said Peter Nicholson, which occurred, as before stated, in the year 1855. Under these facts, all of which appeared on the face of appellants' complaint, and none of which were controverted in or by the fifth paragraph of appellee's answer, the question is presented: When did the cause of action, stated in appellants' complaint, really accrue? did it accrue, upon the death of their ancestor, Thomas Nicholson, in 1848? or can it be said, that their cause of action did not accrue until, by the death of Peter Nicholson in 1855, they acquired a possessory right to an interest in said real estate?

In the case of *Jenkins* v. *Dalton*, 27 Ind. 78, which was a suit for partition, in which the same limitation was pleaded in the same form as in this action, it was held by this court, that the statute of limitations was not applicable to a petition for partition of lands, claimed, as in this case, to be held by tenants in common. In delivering the opinion of the court in the case cited, ELLIOTT, J., said: "In such a case, the right to the partition exists from the date of the tenancy. It may or may not be exercised, in the discretion of the tenants. All the tenants have an equal right to possession, and may all be satisfied to enjoy the estate in common. Partition may not be desired by any one or more of the tenants for a period of time greater than that prescribed by any statute of limitation; and the fact that such a period is suffered to elapse, does not in

any manner affect the right of one or more of the tenants to have partition."

In the case now before us, we incline to the opinion, that the appellants' cause of action for partition can not be said to have accrued, until, by the death of Peter Nicholson, they acquired a possessory right to an interest in the real estate described in their complaint. And we are very certain, that the facts stated in the fifth paragraph of appellee's answer were not sufficient to constitute a defence to the appellants' complaint. The appellants alleged in their complaint, that they were tenants in common with the appellee of the real estate in controversy. If they were such tenants in common, and the appellee did not deny such tenancy in the fifth paragraph of his answer, then the statute of limitations would not, in any manner, affect the right of the appellants to have partition. The possession of one of several tenants in common is not of necessity an adverse possession to the other tenants; and, the tenancy in common not being denied, the paragraph of the answer, setting up the statute of limitations, was clearly insufficient. We hold, therefore, that the court below erred, in overruling the appellants' demurrer to the fifth paragraph of appellee's answer.

In the sixth paragraph of his answer, the appellee alleged, in substance, that he and his grantors, under whom he claimed title, had for twenty years past, before the commencement of this action, held exclusive, undisturbed and undisputed possession of the real estate mentioned in appellants' complaint, adversely, openly, notoriously and continuously, under claim and color of title, against all other claims or title whatsoever. It will be seen from the averments of appellants' complaint, that the appellee or his grantors were lawfully entitled to the exclusive, undisturbed and undisputed possession of the whole of said real estate, until the death of said Peter Nicholson, in 1855. But, until such death, the possession of the appellee or of his grantors, however open, notorious and continu-

ous it might have been, was entirely consistent with the claims of the appellants, as stated in their complaint, and was not, and could not be, an adverse possession to the appellants. The possession of said real estate by the life tenants, or by their grantees, under the deed set out in the complaint, was, and of right ought to have been, exclusive, undisturbed and undisputed; but such possession, during the continuance of the life tenancy, could not be made adverse to the remainder-men, until the expiration of the life or lives, for and during which the estate was held. It seems to us, therefore, that this sixth paragraph of appellee's answer was clearly insufficient, in this, that it did not in terms controvert either the existence of the alleged life tenancy, stated in appellants' complaint, or the continuance of such tenancy until the death of said Peter Nicholson in the year 1855; nor was it alleged in said paragraph, that the possession relied upon therein was not the possession of the tenants for life, or of their grantee. For the reasons given, in our opinion, the court below erred, in overruling the appellants' demurrer to this sixth paragraph of appellee's answer.

The appellee alleged, in substance, in the seventh paragraph of his answer, that he was sole and exclusive owner of all the real estate described in appellants' complaint; that on the 24th day of March, 1847, one Thomas Nicholson, the appellants' ancestor, from and under whom appellants claimed title, sold said real estate to his two sons, Peter and Thomas B. A. Nicholson, by parol, upon the consideration that they should maintain and support said Thomas Nicholson during his life, and bury him decently after his death; that said Thomas Nicholson, in pursuance of said contract, put said Peter and Thomas B. A. Nicholson in possession of all said real estate, and they, with the knowledge and consent of said Thomas Nicholson, took sole and exclusive possession of said real estate, and held and remained in full and exclusive possession thereof, with his knowledge and consent, until his death, on the — day of

————, 1848; that, after said last mentioned day, they held and remained in possession of said real estate, with the knowledge and consent of the appellants or their privies in title, until the 21st day of October, 1850; that said Thomas Nicholson promised and agreed to execute a good and sufficient deed, conveying said real estate to said Peter and Thomas B. A. Nicholson, at the time said contract of sale was made, and they made lasting and valuable improvements upon said real estate, of the value of $500, and fully performed their part of said contract, and maintained him in all the necessaries and comforts of life during his life, and buried him properly and decently after his death, and fully paid and discharged the consideration which they were to give for said real estate; that the said Thomas Nicholson failed and neglected to execute said deed, and, since his death, his heirs have also failed and neglected to execute said deed; that, on the 21st day of October, 1850, said Peter and Thomas B. A. Nicholson sold and conveyed, by deed of general warranty, all their right, title and interest in and to said real estate to Peter Caress for $2,000, and put him in full and exclusive possession thereof; that said Peter Caress fully paid the purchase-money for said real estate, and made lasting and valuable improvements thereon, of the value of $1,000; that, on the 16th day of November, 1851, said Peter Caress, being then seized of said real estate, died intestate and left his widow and heirs in possession of said real estate; that, after the death of said Peter Caress, his administrator was ordered, by the probate court of said Washington county, to sell said real estate to pay the indebtedness of his estate; that, on the 27th day of September, 1852, the administrator of said Peter Caress, deceased, sold said real estate to one Ezekiel D. Logan, which sale was fully approved and confirmed by said court; that said Logan, having fully paid the purchase-money therefor, said real estate was conveyed to him by a commissioner, by order of said court, on the 30th day of March, 1853,

which deed was fully approved by said court; that the widow and three oldest sons, naming them, of said Peter Caress, deceased, purchased said real estate of said Ezekiel D. Logan for $1,900, which they fully paid; that, after the death of said Peter Caress, his widow and heirs remained in possession of said real estate until his administrator sold the same to said Ezekiel D. Logan, when the widow and three oldest sons, naming them, of said Peter Caress, deceased, purchased said real estate of said Logan, and afterward remained in possession under said purchase, and made lasting and valuable improvements thereon, of the value of $500, until the 17th day of March, 1859, when, having paid the purchase-money, said Ezekiel D. Logan, conveyed said real estate to them; that afterward the said widow and three oldest sons of said Peter Caress, deceased, remained in sole and exclusive possession of said real estate until the 28th day of July, 1868, when one of said sons, Ezekiel L. Caress, conveyed all his interest therein to the appellee and the widow of Peter Caress, deceased, Rachel Caress, by deed of that date; that one of said three oldest sons, Isaac N. Caress, died on the 9th day of February, 1867, leaving his mother and his brothers as his only heirs at law, and, on the petition of his administrator, his interest in said real estate was sold and conveyed to the appellee by deed dated April 14th, 1869; that the appellee and said Rachel Caress remained in the exclusive possession of said real estate until the —— day of ——, 1874, when said Rachel Caress died intestate, leaving as her only heirs at law the appellee and certain other children, naming them, all of whom were of lawful age, and conveyed all their interest in said real estate to the appellee, who had been ever since the death of said Rachel Caress, and was then, in the sole and exclusive possession of said real estate, under claim of right and by virtue of his said title. Wherefore appellee said, that he was the equitable owner and in possession of said real

estate, and that the appellants were not entitled to partition thereof.

In the second paragraph of his cross-complaint, in this action, the appellee alleged substantially the same facts that were stated in the seventh paragraph of his answer; but, in the second paragraph of his cross-complaint, the appellee prayed for specific performance, and that a commissioner might be appointed by the court below to convey to him all the interests of the appellants in said real estate.

The alleged facts set out in the seventh paragraph of appellee's answer, it seems to us, were clearly insufficient to constitute any defence or bar to the appellants action. The matters stated in this seventh paragraph of answer, as we construe them, were in no wise inconsistent with the appellants' alleged cause of action, as set forth in their complaint. Very singularly, we think, the appellee did not aver or charge, either in the seventh paragraph of his answer or in the second paragraph of his cross-complaint, that the said Thomas Nicholson had contracted to convey the real estate in controversy to his two sons, Peter and Thomas B. A. Nicholson, in fee simple, or to them and their heirs and assigns forever; but the alleged contract, as stated in each of said paragraphs, like the deed set out in appellants' complaint, contained no words of inheritance, nor any words which necessarily imported, under the law then in force, that the said Thomas Nicholson was to convey said real estate to his said two sons, in fee simple, or any larger estate therein than the life estate which, by his said deed, he did convey. At the date of the alleged contract between the said Thomas Nicholson and his said two sons, and indeed until the 6th day of May, 1853, the common-law doctrine prevailed in this State, that, in any deed or contract for the conveyance of real estate, words of inheritance were necessary in order to show that an estate of inheritance was intended to be created. It seems to us that the deed

set out in appellants' complaint was executed by said
Thomas Nicholson, in harmony and accordance with the
agreement relied upon by appellee in his seventh para-
graph of answer, and the second paragraph of his cross-
complaint; and that neither the agreement nor the deed
constitutes any defence, legal or equitable, to appellants'
action, or gave the appellee any cause of action against
the appellants.   We hold, therefore, that the court below
erred in overruling the demurrers to these last two para-
graphs.

In the ninth paragraph of his answer, the appellee al-
leged, in substance, that the ancestor of the appellants,
Thomas Nicholson, in his lifetime, advanced in personal
and real estate to all of his heirs, excepting said Peter
and Thomas B. A. Nicholson, the full share and interest
that would have been due to each of his said heirs at his,
said Thomas Nicholson's, death, and that said personal
and real estate, so advanced to said heirs, was received
and accepted by them in full of all interest in the estate
of said Thomas Nicholson, deceased.   And this paragraph
contained substantially the same averments as did the
seventh paragraph, for the purpose of showing that the
appellee owned and held the same interest in said real
estate as the said Peter and Thomas B. A. Nicholson had
formerly held therein.  If this action had been commenced
against said Peter and Thomas B. A. Nicholson, while
they claimed to own and hold the real estate in contro-
versy, it is very certain, that they might have availed
themselves of the advancements, alleged in this paragraph
of the answer, if such advancements had, in fact, been
made, as a complete defence to the action.   Their shares
of their deceased father's estate, under the averments of
this paragraph of the answer, embraced and included the
entire real estate in controversy in this action.   If those
averments were true, and the appellants' demurrer con-
cedes their truth, all the said real estate descended, at the

death of said, Thomas Nicholson, to his two sons, Peter and Thomas B. A. Nicholson, to the entire exclusion of all his other heirs at law, the appellants. It can not be doubted, that said Peter and Thomas B. A. Nicholson had the clear legal right to sell and convey their entire interests in the said real estate; and if, by reason of the alleged facts, stated in this ninth paragraph, their interests amounted to the entirety, then they had the clear legal right, in our opinion, to sell and convey the whole of said real estate. They did sell and convey all their interests in said real estate; and, by proper conveyances, the appellee had become and was, as he alleged, the owner of those interests. And if, by reason of advancements to the appellants, those interests actually amounted to the entirety of said real estate, it seems very clear to us that the alleged facts in relation to such advancements would constitute a defence to this action, as complete and available to the appellee, as they would have done to said Peter and Thomas B. A. Nicholson, from whom the appellee derives his title. In our opinion, the court below committed no error, in overruling the appellants' demurrer to the ninth paragraph of appellee's answer.

In the third paragraph of his cross-complaint, the appellee alleged, in substance, that said Thomas Nicholson sold, and attempted and intended to convey in fee, unto Peter and Thomas B. A. Nicholson, his sons, by the deed set out in appellants' complaint, the real estate in contro versy in this action; that, on the 24th day of March, 1847, the said Thomas Nicholson executed said deed, by which it was intended by him to convey said real estate in fee simple to said Peter and Thomas B. A. Nicholson, and it was their intention to take and receive, by said deed, a title in fee simple to said real estate; but that, by mutual mistake of said parties, and by error and inadvertence of the writer of said deed, the word "heirs" was omitted from said deed; that it was the intention of the parties to said deed to insert in the *habendum* thereof the word

"heirs," so that the same would have read, "to have and to hold the same against all claim or claims whatsoever and singular the title, interest and claim in and to the said Peter and Thomas B. A. Nicholson, '*and their heirs*,' forever;" that it was the intention of said parties, that said deed should convey said estate in fee simple to said Peter and Thomas B. A. Nicholson, but that, by error, inadvertence and mistake of the parties and of the person who wrote said deed, the language and words necessary by law to convey an estate in fee simple were omitted from said deed and not inserted therein in the proper and usual place in such deeds; that said Peter and Thomas B. A. Nicholson purchased said real estate, in fee simple, of said Thomas Nicholson, and fully paid him the consideration therefor, and took possession of said real estate, and said Thomas Nicholson agreed and promised to make them a proper deed of conveyance therefor; that, at the time to execute said deed according to said contract, the said Thomas Nicholson executed the deed set out in the complaint, and at the time supposed he had executed said deed according to the terms of said contract, but by inadvertence, error and mistake, he, the said Thomas Nicholson, omitted the word "*heirs*" from said deed, and omitted words of inheritance, and by mistake, error and inadvertence, "the said deed was accepted by these parties," and, by mutual mistake of the parties, said deed was executed without inserting the words necessary to convey said real estate in fee. And this paragraph of the cross-complaint, for the purpose of showing that the appellee owned and held the same interest in said real estate, which the said Peter and Thomas B. A. Nicholson had acquired therein under said deed, set out in appellants' complaint, contained substantially the same averments as were set out in the seventh paragraph of appellee's answer.

It seems to us, that the appellee's only defence to this action, if he has any, lies in the reformation of the deed set out in appellants' complaint, provided always, that

there was such a mutual mistake of fact, in said deed, as the appellee attempted to assert in this third paragraph of his cross-complaint. For this reason, it is all important, in our opinion, that this paragraph of his cross-complaint should contain such necessary averments as would show clearly, and beyond a peradventure, that there was such a mutual mistake of fact, in the execution of said deed, as that he would be clearly entitled, under the law, to a reformation of said deed. A mutual mistake of fact, when the same is made manifest, the courts will generally rectify and correct; but where the mistake is one of law, or as to the legal effect of what has been done, the courts afford no remedy. The probabilities are that the mistake in the deed now under consideration, if any mistake was made, was one of law or of legal effect, rather than of fact. But that is not the question now before us. The question for our consideration is, whether or not this third paragraph of appellee's cross-complaint states facts sufficient to constitute a cause of action against the appellants, or to entitle the appellee to a reformation of the deed, as prayed for in said cross-complaint. We think that this paragraph of the cross-complaint is defective in this, that it contains no averment to the effect, that, at the time of the execution and delivery of the deed in question, either the grantor or the grantees therein were ignorant of the precise contents of said deed, or of the omission therefrom, as alleged, of the word "heirs." If the grantees in said deed, at the time of their acceptance thereof, had actual knowledge of its contents and of the fact that it contained no proper words of inheritance, it seems to us that neither they nor the appellee, claiming under them, could ask a judgment for the reformation of said deed. And if the grantor, when he executed and delivered said deed, had actual knowledge of its contents and of the omission therefrom of all proper words of inheritance, such knowledge on his part would utterly preclude the idea of any mistake on his part in the execution

Nicholson *et al. v.* Caress.

of said deed. Therefore it seems to us that this third paragraph of the cross-complaint should have contained a direct and positive averment of the ignorance of the grantor and grantees in said deed, of the alleged mutual mistake therein, at the time of its execution and delivery; and, for the want of such averment, we hold that the court below erred in overruling appellants' demurrer to this paragraph of the cross-complaint. *Allen* v. *Anderson,* 44 Ind. 395.

The only remaining error assigned by the appellants on the record of this cause is the decision of the court below in overruling their motion for a new trial. The causes assigned for such new trial were as follows:

1. The decision of the court was not sustained by sufficient evidence; and,

2. The decision of the court was contrary to law.

The views which we have expressed in relation to the pleadings in this cause will lead, of necessity, to a material change of the issues in the court below. Therefore it is unnecessary, and perhaps would be improper, for us to enter now into a detailed or critical examination of the evidence in the record. We may say generally, however, without impropriety, that, in our opinion, the evidence adduced upon the trial did not sustain the finding of the court below on the material issues in this cause.

The judgment of the court below is reversed, at the costs of the appellee, and the cause is remanded, with instructions to the court to sustain the appellants' demurrers to the fifth, sixth and seventh paragraphs of appellee's answer, and to the second and third paragraphs of his cross-complaint, and for further proceedings.

Petition for a rehearing overruled.