Nov. Term,
1851.

KENWORTHY
v.
TULLIS.

KENWORTHY *v.* TULLIS and Another.

A deed of conveyance was as follows: "This indenture, &c., witnesseth, that *M. H.*, in consideration of, &c., paid, &c., by *L. K.*, hath granted, bargained, sold, and conveyed, and, by these presents, doth grant, bargain, sell, and convey unto the said *L. K.*, the free privilege to enter upon a certain tract or piece of land claimed, owned, and held by the said *H.*, being, &c., (describing it,) and to dig a race, a mill-pit, and tail-race, to the creek; to erect a saw-mill and occupy the same forever; and, likewise, to cut and remove any timber that may be in the way of digging, building, and occupying said mill; the said *L. K.* not committing any unnecessary waste of timber on said land belonging to said *H.*, and said *K.* to commence and finish said mill as soon as practicable; and the said *M. H.* doth hereby bind himself, his heirs, &c., to ratify and confirm to the said *L. K.*, his *heirs*, and assigns forever, the aforesaid privilege to enter on said land, to dig, build, and occupy as aforesaid forever, and to hold the same for his own proper use and behoof, free from rents or any other claim forever." Here followed certain covenants of warranty. *Held,* that the part of the deed above recited conveyed the mill privilege and premises described therein, to *K.* and his heirs, in fee-simple.

The clause recited, saying, "the said *M. H.* doth hereby bind himself, his heirs," &c., "to ratify and confirm to the said *L. K.*, his heirs, and assigns, the aforesaid privilege," &c., does not appear to have been intended to operate as a *covenant*, but to constitute a part of what, in a more formally drawn instrument, would be called the *habendum* and *tenendum*.

The thing, and the estate granted by a deed, may be granted either by words contained in the *premises*, or in the *habendum* and *tenendum*.

*Friday,*
*November 28.*

ERROR to the *Tippecanoe* Court of Common Pleas.

SMITH, J.—Trespass *quare clausum fregit* by the appellant against the appellees. The first count alleges that the defendants broke and entered the close of the plaintiff, put him out of possession, and deprived him of the use and occupation of it. The second count charges that the defendants dug a certain mill-race and mill-pit, and erected certain mills upon the said close, thereby encumbering it, &c. Plea, the general issue; with an agreement that all legal matters of defense, which might be given in evidence under any form of pleadings, should be admitted. The judgment was for the defendant.

The evidence was as follows:

In *October*, 1831, *Moses Hockett* was the owner of the

land described in the declaration, and executed to *Lewis Kiser*, who died in 1847, the following deed:

" This indenture, made," &c., " witnesseth, that the said *Moses Hockett*, of the first part, for and in consideration of the sum of 10 dollars, to him in hand paid by the said *Lewis Kiser*, of the second part, the receipt whereof the said *Moses Hockett* doth hereby acknowledge, hath this day granted, bargained, sold, and conveyed, and by these presents doth grant, bargain, sell, and convey, unto the said *Lewis Kiser*, the party of the second part, the free privilege to enter upon a certain tract or piece of land claimed, owned, and held by the said *Hockett*, being," &c., (here describing it,) " and to dig a race, a mill-pit, and tail-race to the creek, to erect a saw-mill and occupy the same forever, and likewise to cut and remove any timber that may be in the way of digging, building, and occupying said mill, the said *Lewis Kiser* not committing any unnecessary waste of timber on the said land belonging to the said *Hockett*, and said *Kiser* to commence and finish said mill as soon as practicable; and the said *Moses Hockett* doth hereby bind himself, his heirs, executors, administrators, and assigns, jointly and severally, to ratify and confirm to the said *Lewis Kiser*, his *heirs*, and assigns forever, the aforesaid privilege to enter on said land, to dig, build, and occupy as aforesaid forever, and to hold the same for his own proper use and behoof, free from rents or any other claim forever. And the said *Moses Hockett* doth, for himself, his heirs, executors, administrators, and assigns, put the said *Lewis Kiser* into the full, free, and peaceable possession of the aforesaid privilege. And from all persons claiming under him, and from all other claims whatsoever, the said *Moses Hockett* the said *Lewis Kiser*, his heirs, and assigns, in the free use of the aforesaid privilege forever, will warrant and defend. In testimony whereof," &c.

In *April*, 1849, *Hockett* conveyed the tract of land upon which this mill-privilege was situated, to *Kenworthy*, the plaintiff in this suit. In the deed to *Kenworthy*, " a certain water-privilege granted to *Lewis Kiser*" is excepted.

Nov. Term,
1851.

KENWORTHY
v.
TULLIS.

The fee-simple interest of the said mill-privilege was proved to be of the value of 75 dollars. In the fall of 1849, the defendants below, who were the heirs at law of *Lewis Kiser*, entered upon the said lands, and rebuilt and occupied the mill which had been erected by *Kiser* in his lifetime.

The appellees contend that the deed from *Hockett* to their ancestor conveyed the mill-privilege and premises in question, to him and his heirs in fee-simple, and the Court below gave it this construction in its charge to the jury.

The appellant insists that a life estate only was conveyed to *Kiser*. His counsel argue that the words of inheritance necessary to convey a fee-simple estate are wanting in those parts of the deed technically called *the premises*, and the *habendum* and *tenendum*, and that the estate described in these parts cannot be enlarged by words of inheritance used in the *covenants* or *warranties*.

In the deed now in question, the word "*heirs*" is used in two places. First, in that clause which says "the said *Moses Hockett* doth hereby bind himself, his heirs," &c., "to ratify and confirm to the said *Lewis Kiser*, his *heirs*, and assigns, the aforesaid privilege," &c.; and secondly, in the general warranty. It will be observed that in the clause first above mentioned, the words "ratify" and "confirm" are not used in reference to the estate or interest in the thing previously granted, but to the thing itself, that is, the privilege to enter upon the land, &c. The person who drew the deed was probably ignorant of the technical meaning of those words, and intended only by the repetition in this clause of the privileges granted, to cover any defects he may have made in the previous wording of them. It is obvious that the instrument was drawn up by an inexperienced hand. There are none of the formal parts of a deed which can be distinctly separated, except the warranty at the close. But it is not necessary that a deed should have these formal parts. There are many valid deeds which contain nothing more than what is usually contained in the premises. The

clause in this deed, above mentioned, does not appear to have been intended to operate as a *covenant*, but rather to constitute a part of what, in a more formally drawn instrument, would be called the *habendum* and *tenendum*. It is, therefore, unnecessary to resort to the warranty for the words required to convey an estate in fee-simple. They are found in the previous clause, and whether that clause be considered as a part of the *premises*, or of the *habendum* and *tenendum* is immaterial, as the agreements respecting the estate, and the thing granted, may be contained in either. 2 Black. Comm. c. 20, Tit., *Deed*.

We think, upon an examination of the whole instrument, there can be no difficulty in determining that it was the intention of the parties a fee-simple should be conveyed, and, as that intention may be carried into effect without violating any rule of law relative to the words necessary to be used, we think the instruction given was right.

*Per Curiam.*—The judgment is affirmed with costs.

*Z. Baird*, for the plaintiff.

*R. C. Gregory*, for the defendants.