JOHN BRACKETT *versus* JAMES GODDARD.

Timber trees, cut down and lying at full length upon the ground where they grew, will pass by a deed of the land.

ON REPORT.

ASSUMPSIT on account annexed, for $60, for money paid by the plaintiff to the defendant, for logs and down timber, the title to which, the plaintiff alleged, was not in the defendant at the time of sale. The writ also contained a count for money had and received for same amount.

It appeared from the report that the defendant owned, in the summer of 1863, a timber lot in Hermon; that he cut down a large number of hemlock trees thereon, peeled the bark therefrom and removed it from the lot, — intending to prepare the trees by cutting off the tops and haul them off as logs to be sawed during the ensuing winter. The trees were severed from the stumps, and they lay as they fell, with the tops on. In the felling the choppers endeavored, so far as practicable, to have them lie in a good position for peeling, and afterwards hauling them off.

In the fore part of the fall of the same year, the defendant conveyed the lot by deed of warranty, without any reservations, to one Works. On the 20th of the following November, after Works had entered into possession of the lot under his deed, the defendant sold the hemlocks thus cut, to the plaintiff, by a bill of sale. To recover back the money paid for the bill of sale, this action was brought.

Previous to the commencement of this suit, the plaintiff demanded the hemlocks of Works, who refused to deliver them or permit the plaintiff to take them. Thereupon the plaintiff sued Works in trover therefor, and entered his action in Court, which action was continued from term to term for several terms, when that action was by agreement of parties entered " neither party." At a certain term of the Court, during the pendency of that action, the plaintiff wrote

to the defendant, then residing at Manchester, N. H., asking him to come to Bangor as a witness. The defendant went to Bangor at the time requested. For his travel and attendance as a witness, he filed an account in set-off in this action.

The Court were to render such judgment as the legal rights of the parties entitled them to.

*D. D. Stewart*, for the plaintiff.

Do several acres of hemlock trees, cut down and lying at full length as they fell upon the ground, untrimmed, with tops all on, pass by a deed of the land? Can the grantor, who has transferred both the fee and possession, successfully set up a claim of title to such trees, and take them away against the consent of his grantee? Thousands of acres of land are daily conveyed in Maine and the northern border States, covered with choppings, cut-downs, fallen trees and down timber, and nobody before, so far as the reports of cases in the several States show, ever presented such a claim. "The novelty of a particular action or defence, when the facts on which it is founded are of common occurrence, is a strong argument that it cannot be upheld." *Costigan* v. *Mohawk & Hudson R. R. Co.*, 2 Denio, 609; *Spear* v. *Cummings*, 23 Pick., 225; *Peters* v. *Peters*, 8 Cush., 535 – 6. If a warranty deed will not carry with it felled trees, it cannot convey, for the same reason, rocks and loose stones lying on top of the ground.

The rule touching fixtures is the same between grantor and grantee as between heir and executor. 2 Kent's Com., 345; *Dispatch Line* v. *Bellamy Manf. Co.*, 12 N. H. 205.

Is it the duty of an executor to return an inventory of the felled trees, choppings and down timber which were on the lands of his testator at the time of his death?

*A. W. Paine*, for the defendant.

Trees severed from the soil are personal property, and trover will lie for them, the conversion being regarded as

Brackett *v.* Goddard.

made at the moment they are removed from the stump. And so in trespass. *Longfellow* v. *Quimby*, 33 Maine, 457.

Contracts by parol will be sustained respecting them, which would otherwise be void by the statute of frauds. Brown on Stat. of Frauds, 245, § 242; *Smith* v. *Surman*, 9 B. & C., 561.

Logs, not the growth of the land sold, but drawn upon it from other land, as is frequently the case in the forest, must be personal property.

"Trees are part of the real estate while growing and before they are severed from the freehold, but as soon as they are cut down they are personal property." Bouvier's Law Dict., title "Trees;" 1 Hilliard on Torts, 544; *Bank* v. *Craig*, 1 Barb., 542; *Warner* v. *Leland*, 2 Barb., 613.

*Kitt, edge* v. *Woods*, 3 N. H., 506, speaks of timber trees, if blown down, or cut down by a stranger, although severed from the land, as belonging to the lessor, which implies the contrary when intentionally cut down by the owner.

The deed passes whatever is property of the realty; and that is to be regarded as a part of the realty which, in the estimation of the parties and according to their intention, is such, the form of the thing itself being considered. The rule is illustrated by the doctrine of fixtures, the intention of the parties and the nature of the thing itself entering into the consideration in settling the question whether the thing is or is not a part of the realty. If trees are cut with a design to remove them as an article of use or merchandise, it becomes personal estate. If it was the intention of the parties to prosecute that design, and remove it from the land, it still retains its personal character, and does not pass by deed of the land, provided the visible appearance is in conformity with the design. If the intention of the grantor, as evidenced by the thing itself, is not to remove but to abandon it as an article of use or merchandise and make it thus a part of the realty, it remains such and passes. Tops of trees, left from logging operations, down timber, abandoned on the land, exhibit themselves as abandoned

things, and become as much a part of the land as the detached boulders on the surface, or the piles of manure which have been hauled upon the land for the purposes of agriculture. They are like the leaves of the forest which, though most distant in their nature from real estate, are yet, by their abandonment, as much a part of the soil as the earth they lie upon. Tops of trees, abandoned trunks, like leaves, are organized matter returning by decay to dust. But the stick of timber, the mill log, the pile of bark and cordwood, are not such. Their nature discovers their designed use, not to return to earth as soil, but to be taken off for the arts of life. They speak a language of themselves, proving no design of being abandoned, or becoming, or remaining any longer a habitant of the soil where it grew. The moment it left the stump, it ceased to be nourished by the earth, and its new character gives it its laws and governs its future course. It can then be no longer an incident to the soil, more than the ox which is depastured upon it. But, like the ox, if dead and buried, or not buried, in its soil, becomes, upon such abandonment, a part of the realty, and not before. *Small* v. *Danville*, 51 Maine, 359.

APPLETON, C. J., — This is an action brought to recover the price of certain logs sold by the defendant to the plaintiff. The claim is based upon an alleged failure of the defendant's title.

The defendant, while owning a lot of land in Ware cut down a quantity of hemlock trees thereon. After removing the bark therefrom and hauling it off the land, he conveyed the lot to one Works, by deed of warranty, without any reservation whatever. At the date of this deed, the hemlock trees in controversy were lying on the lot where they had been cut, with the tops remaining thereon.

The defendant, after his deed of the land to Works, conveyed the hemlocks cut by him to the plaintiff. Works, the grantee of the defendant, claimed the same by virtue of his

deed. The question presented is whether the title to the logs is in the plaintiff or in Works.

Manure made upon a farm is personal property and may be seized and sold on execution. *Staples* v. *Emery*, 7 Greenl., 301. So, wheat or corn growing is a chattel and may be sold on execution. *Whipple* v. *Tool*, 2 Johns., 419. Yet it is held that growing crops and manure, lying upon the land, pass to the vendee of the land, if not excepted in the deed. 2 Kent, 346, or by statute, as in this State by R. S., c. 81, § 6, clause 6. Fencing materials on a farm, which have been used as a part of the fences, but are temporarily detached, without any intent of diverting them from their use, as such, are a part of the freehold, and pass by a conveyance of the farm to a purchaser. *Goodrich* v. *Jones*, 2 Hill, 142. Hop poles, used necessarily in cultivating hops, which were taken down for the purpose of gathering the crop and piled in the yard, with the intention of being replaced in the season of hop raising, are part of the real estate. *Bishop* v. *Bishop*, 1 Kenan, 123.

Timber trees, if blown down, or severed by a stranger, pass by a deed of the land. "We think that it cannot admit of a doubt," remarks RICHARDSON, C. J., in *Kittredge* v. *Wood*, 3 N. H., 503, " that trees felled and left upon the ruit upon trees, or fallen and left under the trees .t grew, and stones lying upon the earth, go with the ᶜ there be no reservation." ⹁ The hemlock trees were ⹁on the ground. The tops and branches were re-... .ng upon them. They were not excepted from the defendant's deed; and, being in an unmanufactured state, they must, from analogy to the instances already cited, pass with the land. Such, too, is the statute of 1867, c. 88, defining the ownership of down timber. It would have been otherwise, had they been cut into logs or hewed into timber. *Cook* v. *Whitney*, 16 Illinois, 481.

The defendant, at the plaintiff's request, travelled from another State, as a witness, to testify for him in his suit against Works. He claims to have his fees allowed in set-

off in this suit. His account in set-off was regularly filed. He is entitled to compensation therefor, which, as claimed, will be travel from his then place of residence, and attendance, in accordance with the fees established by statute.

*Offset allowed.—Defendant defaulted,*
*to be heard in damages.*

CUTTING, KENT, WALTON, DICKERSON and BARROWS, JJ., concurred. TAPLEY, J., did not concur.