No. 8925.

## CARVER *v.* CARVER ET AL.

VERDICT.— *Venire de Novo.*—*Practice.*—When the verdict of a jury, whether general or special, is so imperfect or defective that it will not authorize a judgment in favor of either party, a motion for a *venire de novo* is the proper remedy, and must be sustained.

From the Madison Circuit Court.

*M. S. Robinson* and *J. W. Lovett,* for appellant.
*H. D. Thompson, W. March* and *T. B. Orr,* for appellees.

HOWK, J.—This suit was commenced by the appellant against one Ira K. Carver, as sole defendant, to recover the possession of, and quiet the title to, certain real estate in Madison county. Afterwards a supplemental complaint was filed, suggesting the death of said Ira, and making the appellees, as his widow and heirs at law, parties defendants to the action. The cause having been put at issue was tried by a jury, and a special verdict was returned, in substance, as follows:

"We, the jury, having been requested to find a special verdict, do find the facts in this cause to be as follows:

"*First.* This action was commenced on the 28th day of March, 1878, against Ira K. Carver, who, while the suit was pending, died and the defendants were substituted in his stead.

"*Second.* In the year 1867, and previous to the 13th day of July of that year, William Carver, the plaintiff, and Ira K. Carver, now deceased, who was the husband of Esther J. Carver and the father of the other defendants, entered into a parol agreement for the purchase of the lands in controversy as described in the complaint, the title to which was clouded by taxes, tax titles, mortgages, liens and encumbrances. Under said agreement, said Ira K. Carver was to examine the records, look up the liens and encumbrances and assist in procuring a good title for said lands. Said William Carver, the plaintiff, was to furnish the money necessary to purchase said lands and remove all liens and encumbrances that were against the same, and the title thereto was to be taken and held in his name. Said Ira K. Carver was to have the privilege of paying to plaintiff one-half of the purchase-money so advanced and paid by the plaintiff, with interest on one-half of the purchase-money, and one-half of the taxes to accrue on said land; and, when he made such payments to William Carver, he, said Ira, was to have one-half of the land; and in case said Ira should fail to pay said William Carver the aforesaid sums, then, when the land was sold, the profits arising from the purchase and sale of the same were to be divided equally between the parties, after the payment out of the proceeds of such sale to said William of the purchase-money so paid by him, with interest on one-half of the same, and one-half of the taxes paid on said land by said William. The land was, under said agreement, to be divided for farming purposes, between said William and Ira K., one-half of which was to be cultivated by William and the other half by Ira K. Carver; said William Carver was to own all the

crops raised on the part cultivated and farmed by said Ira,. as well as the crops on the part cultivated and farmed by himself. Said William Carver was to furnish said Ira a living for himself and family out of the proceeds of said crops so raised by said Ira, and the residue of the proceeds of the crops so raised by said Ira was to be applied on the one-half of the purchase-money, interest and taxes, which he was to pay under said agreement. Under said agreement the parties were to go into the possession of said lands, each to farm one-half thereof.

" *Third.* The plaintiff under said agreement paid, as purchase-money on said farm and land in controversy, the following sums : To James James, for a judgment and decree of foreclosure on said lands, the sum of $960, on the 29th day of April, 1869, which sum was for the principal and interest of the note which he executed to James James for $800, April 29th, 1867, due two years after date and bearing ten per cent. interest from date, given for the assignment of said judgment and decree of foreclosure ; that he paid to James Gordon the sum of $780, about the 1st day of June, 1867, the principal and interest of a note dated April 29th, 1867, for $773, given for the assignment to him of a mortgage and claim said Gordon held against said land ; he paid $32.32 July 13th, 1867, for the purchase of said land at sheriff's sale, on said decree of foreclosure so assigned to him by James James, being the amount of the sheriff's fees on said sale. He paid on two notes executed by him to Joseph Pence, which were given for the conveyance of the interest of said Joseph Pence in said lands to plaintiff, said Joseph Pence having purchased said land at sheriff's sale, the sum of $1,798, being the principal and interest of two notes, bearing ten per cent. interest, dated July 13th, 1867, due December 25th, 1868, and December 25th, 1869, for $750 each ; of which amount he paid $861.50, the principal and interest of the first note, on the 25th day of December, 1868, and $936.50, the principal and interest of the other note, on the 25th day of December, 1869. He

paid to James W. Sansberry $25, on the 25th day of December, 1871, being a part of the consideration for the conveyance of the interest of Joseph Pence in said land to him. He paid to John Tappin, on a decree for the enforcement of a tax lien against said land, the sum of $162, on February 20th, 1868, for taxes that had accrued on said land prior to the purchase of the same, under said agreement.

"*Fourth.* After the purchase of said lands, under said agreement, the plaintiff paid the taxes thereon, as follows : " (Here follows an itemized statement of the taxes paid each year, from 1869 to 1878, inclusive, amounting in the aggregate to the sum of $389.53, which we need not set out.)

"*Fifth.* That after the purchase of said land under said agreement, the plaintiff and Ira K. Carver divided the land for farming purposes, and each took the part allotted to him by agreement.

"*Sixth.* That when this suit was commenced the plaintiff held title to all the land described in the complaint, except twenty-seven acres as hereinafter shown to have been sold to Elias Fink ; that such title was acquired by purchase at sheriff's sale on the decree of foreclosure in favor of James James, and assigned to William Carver as aforesaid, the aforesaid conveyance of Joseph Pence to him, the purchase from James Gordon of his interest therein, and the payment of the decree for the enforcement of lien for taxes, held thereon as aforesaid, under said agreement.

"*Seventh.* That, of said land so purchased under said agreement, there was sold to Elias Fink, on the 4th day of February, 1871, twenty-seven acres out of the southeast quarter of the northwest quarter of section 23, township 21, range 7 east ; the land so sold to said Fink was conveyed to him by plaintiff for the consideration of $1,080, which sum was paid by said Fink to the plaintiff.

"*Eighth.* That, of the lands so purchased under said agreement and still held in the name of the plaintiff, there remains unsold the north half of the northwest quarter, and the south-

west quarter of the northwest quarter, except fourteen acres off of the south end thereof, also eight acres off of the north end of the southeast quarter of the northwest quarter, all in section 23, township 21 north, range 7 east, containing in all 114 acres, in Madison county, Indiana.

"*Ninth.* The said Ira K. Carver made no payments under said agreement on the principal or interest of the amounts paid as aforesaid by the plaintiff on purchase-money for said real estate; nor did the said Ira K. Carver pay any of the taxes on said land under said agreement.

"*Tenth.* Said Ira K. Carver never requested or demanded a sale of said land, under said agreement, and the plaintiff never refused to sell the same.

"*Eleventh.* That, of the portion of land set off to Ira K. Carver, there were in cultivation 36 acres, in 1868, by said Ira, in corn; that, under said agreement, a portion of the corn raised thereon that year was delivered to William Carver; that, after the same was so delivered, William and Ira settled their accounts arising out of the crops so raised by said Ira, and nothing was found due said Ira, on account of said corn, to be credited to him under said agreement, but the same was settled for by the mutual accounts between the parties.

"*Twelfth.* That in September, 1869, Ira K. Carver was sent to the insane asylum at Indianapolis, and left growing on said premises so set apart to him 15 acres in corn, and no one in charge of said premises to gather the same, and that said William gathered said corn. The rental value of the portion of said real estate allotted to Ira K. Carver for 1870, was $245.

"*Thirteenth.* At the time this suit was commenced the real estate in controversy was of the value of $45 per acre.

"*Fourteenth.* The rental value of Ira K. Carver's portion of the land was $100.

"Agreed to. (Signed)   CALVIN NICHOLSON, Foreman."

The appellant moved the court for judgment in his favor on the special verdict of the jury, which motion was overruled, and to this ruling he excepted and filed his bill of ex-

ceptions. He then moved the court for a judgment on the first paragraph of his complaint, which motion was also overruled, and his exception was duly saved to this decision. His motion for a *venire de novo* was then overruled by the court, and his exception was saved to this ruling. Thereupon the court found as conclusions of law from the special findings and verdict of the jury, that the appellant was the owner in fee simple, and entitled to the possession of the real estate described in his complaint; and that, upon the accounting between the parties, the appellant was indebted to the appellees in the sum of $618. To these findings and conclusions of law by the court the appellant at the time objected and excepted, and the court then rendered judgment in accordance with its conclusions of law, and that each party pay one-half of the costs which have accrued in this cause since the reversal of the former judgment herein by the Supreme Court. See *Carver* v. *Carver*, 64 Ind. 194.

The statement by the court of its conclusions of law upon the special verdict of the jury is a practice hardly warranted, we think, by any of the provisions of the civil code of this State; but if the conclusions of law were fairly sustained by the facts found by the jury, the practice, though anomalous, might not be regarded as erroneous. In this case we do not think that the facts found by the jury in their special verdict authorized the court's conclusions of law thereon, if such they may be called.

The appellant has assigned as error the decision of the trial court in overruling his motion for a *venire de novo*. We are of the opinion that this error is well assigned. We have given almost an exact copy of the special verdict by the jury, and it will be seen therefrom that it was so imperfect and defective it would not authorize a judgment in favor of either party. It would seem, indeed, that the trial court did not rest its judgment upon the special verdict, but, under the name of conclusions of law, the court stated certain matters of fact rather than of law, and thereon rested its judgment. The

jury did not find in their special verdict that the appellant was entitled to the possession of the real estate in controversy, although his right to such possession was one of the facts in issue; but the court stated in its conclusions, that he was entitled to such possession, and thereon founded its judgment in his favor. The jury did not find in their special verdict, that the appellant was indebted to the appellees in any sum whatever, but the court found in its conclusions, that the appellant was indebted to the appellees in the sum of $618, and for this sum, so found, rendered judgment in appellees' favor against the appellant. Neither of these judgments is sustained by the facts found by the jury in their special verdict.

" 'A *venire de novo* is granted when the verdict, whether general or special, is imperfect by reason of some uncertainty or ambiguity, or by finding less than the whole matter put in issue, or by not assessing damages.' 2 Tidd's Prac. 922." *Bosseker* v. *Cramer*, 18 Ind. 44. *Jenkins* v. *Parkhill*, 25 Ind. 473; *Ridenour* v. *Miller*, *ante*, p. 208.

The court erred, we think, in overruling the appellant's motion for a *venire de novo*. The evidence is not in the record, and no other question is presented for our decision.

The judgment is reversed, with costs, and the cause is remanded, with instructions to set aside the special verdict and grant a *venire de novo*.