Branson v. Studabaker.

## No. 15,644.

## BRANSON v. STUDABAKER.

JURISDICTION.—*Supreme Court.*—*Agreement of Parties Can Not Confer Jurisdiction.*—*A Question of Law.*—For jurisdiction of the subject-matter in controversy, the court must look to the law, and the agreement of the parties litigant that this court has jurisdiction does not affect the question.

SUPREME COURT.—*Highest Judicial Tribunal.*—*Takes Its Rank and Authority from the Constitution.*—*Not Subject to Legislative Interference.*—The Supreme Court is the highest judicial tribunal of the State, and takes its rank from the Constitution, and the Legislature can not deprive it of authority incident to its position or deprive it of its rank; for distribution of judicial power is made and vested by the Constitution.

LEGISLATURE.—*Constitutional Law.*—*Power to Create Appellate Tribunals.*—The Legislature can create appellate tribunals inferior to the Supreme Court by limiting their jurisdiction to cases not of the highest grade, and to appeals from recoveries of a limited nature.

STATUTE CONSTRUED.—*Appellate Court.*—*Act Creating.*—*Transferring Cases from Appellate Court Docket to Supreme, and vice versa.*—In the act creating the Appellate Court the provision regulating the practice in the Supreme and Appellate Courts, by providing for the transfer of cases from one docket to the other, is not special legislation, and is, therefore, not void as being unconstitutional.

APPELLATE COURT.—*Transfer of Cases from Supreme Court to.*—*Validity of Act.*—*Statute Construed.*—The act providing for the transfer of cases to the Appellate Court, which were appealed to the Supreme Court prior to its enactment, is valid; for remedies and tribunals may be changed by substitution without impairing vested rights.

SAME.—*Jurisdiction of.*—*Given Expressly by Statute.*—*No Implied Jurisdiction.*—The statute creating the Appellate Court expressly designates the class of appeals over which it is given jurisdiction, and the express mention of one thing implies the exclusion of others.

SAME.—*Jurisdiction of.*—*Title to Real Estate Incidentally Involved.*—Where the question of title to real estate is a mere incidental matter, and there is no decree or judgment affirming it to be in one or denying it to be in another, and the recovery is for money only, and does not exceed one thousand dollars, the jurisdiction is in the Appellate Court.

APPEAL.—*Theory in Trial Court, Theory on Appeal.*—The theory upon which a case was tried must be adhered to on appeal.

TITLE.—*Partition Proceedings.*—*Title in Issue.*—*Effect on.*—In an action for partition, title to real estate may be put in issue; and the judgment ren-

| | |
|---|---|
| 133 | 147 |
| 138 | 204 |
| 139 | 388 |
| 133 | 147 |
| 141 | 309 |
| 141 | 314 |
| 141 | 425 |
| 141 | 545 |
| 133 | 147 |
| 150 | 161 |
| 150 | 271 |
| 151 | 78 |
| 152 | 556 |
| 133 | 147 |
| 157 | 605 |
| 157 | 607 |
| 133 | 147 |
| 165 | 287 |
| 133 | 147 |
| f167 | 159 |
| f168 | 542 |
| f168 | 574 |
| 133 | 147 |
| 169 | 644 |

dered thereon, if in a court of competent jurisdiction, and the question of title appears on the face of the record, will operate as a former adjudication in any subsequent litigation between the same parties involving the same matter.

SAME.—*In Fee.—How Acquired.—Easement.—Title of in Fee.*—Title in fee to land may be acquired by possession or limitation. An easement is an estate in land, and may, therefore, be held in fee.

SAME.—*In Fee.—Effect on of Strengthening or Augmenting Deeds.*—When a grantee once acquires an estate in fee it remains in him, unless he subsequently divests himself of it, and he may accept deeds strengthening his title or augmenting appertaining privileges without losing title once vested.                                                              •

SPECIAL VERDICT.—*Failure to Embrace all Matters in Issue.— Venire de Novo. — When Motion for Will Lie.—New Trial.—Motion for.— When Proper.— Practice.*—A special verdict that does not embrace all the matters in issue is not bad as against a motion for a *venire de novo,* as such motion only lies where the verdict upon its face is defective in form. Where the verdict is contrary to the evidence, or does not state a fact which the party believes the evidence establishes, the remedy is by a motion for a new trial.

SAME.— *When Sufficient to Support a Judgment.—Conclusions of Law and Matters of Evidence in.—Effect on.*—If a special verdict states sufficient facts to support a judgment, the mere presence of conclusions of law or matters of evidence will not vitiate the verdict; the rule being that verdicts are to receive a reasonable construction, and are not to be disregarded if they can thus be sustained.

PRACTICE.—*Special Verdict.—Motion for Judgment on.—Saving Exceptions.—* If the facts stated in a special verdict entitle a party to judgment, the proper procedure is by a motion for judgment; and the question of the sufficiency of the facts may be saved by an exception to the ruling on such motion by the party adversely affected thereby.

DAMAGES.— *What the Verdict Must Show.—Assessment of in the Alternative.—* In action to recover damages only, the amount of the damages must be stated, or such facts stated as leave nothing to be done but to compute them ; and the usual and appropriate method of making the assessment is in the alternative.

JUDGMENT.—*Failure of to Follow Verdict.—Remedy for.*—When the judgment fails to follow the verdict, the remedy is not by a motion for a new trial, or for a *venire de novo,* but by a motion to modify the judgment.

SAME.—*Special Verdict.—Assessment of General Sum Inconsistent with Specific Facts.—Effect on Judgment.—Not Ground for a Venire de Novo.*—Where a special verdict states the general sum as the damages, it is not necessarily bad, on a motion for a *venire de novo,* although the specific facts stated may not, in law, entitle the successful party to the damages specified in the general statement, for the appropriate judgment may be entered on, the specific facts.

SAME.— *Ultimate.*—*Effect on of Intermediate Errors.*—Intermediate errors will not reverse where the ultimate judgment is right. -

CONVEYANCE.— *What Passes by Implication.*— *Grant of Mill, Mill-race, etc.*— In a conveyance granting a mill-race, a mill, or the like, a grant of the land forming an essential part of the thing granted is conveyed, although there may be no specific designation of the particular parcel or quantity of land occupied by the mill or race. ●

From the Randolph Circuit Court.

*J. W. Ryan, W. A. Thompson, A. O. Marsh* and *J. W. Thompson,* for appellant.

*J. W. Newton, E. L. Watson* and *J. S. Engle,* for appellee.

ELLIOTT, J.—A question of jurisdiction is in the record, and must be determined. The amount recovered in the court below was four hundred dollars, and there is no specific decree, so that, on the face of the judgment, it appears that there was a recovery of money only. Both parties contend that jurisdiction is in this court, and not in the Appellate Court, but the grounds upon which they assert that jurisdiction resides in this court are widely different. The agreement of the parties that this court has jurisdiction does not affect the question, for it is established law that consent can not confer jurisdiction of the subject matter. See authorities cited, Elliott's Appellate Procedure, sections 13, 418, 498. A court must look to the law for its jurisdiction of the subject, and must, notwithstanding the agreement of the parties, decline to entertain jurisdiction if it is not conferred by the law. We must, therefore, ascertain and determine whether this appeal is within the jurisdiction of this tribunal, or within that of the Appellate Court.

The Supreme Court is undoubtedly the highest judicial tribunal of the State, and takes its rank from the Constitution. As its rank is bestowed upon it by the Constitution, the Legislature can not lower that rank or deprive it of the authority incident to its position as the superior judicial tribunal of the State. Judicial power is an element

Branson *v.* Studabaker.

of sovereignty which the people, the original fountain of all governmental power, have distributed to the courts. This distribution is made by the Constitution, and when tribunals are created pursuant to its provision, it vests the judicial power in them, for the Constitution, not statutes, vests judicial power. See authorities cited Elliott's Appellate Procedure, section 1. It is not in the power of the Legislature to make the Supreme Court inferior, in any respect, to any other tribunal; but in it remains secure from legislative attack, the highest judicial power distributed by the Constitution. There must be in every State a court capable of exercising ultimate judicial power, otherwise there would be unending conflict. In this State there is a court invested with ultimate judicial power, and that is the Supreme Court. See authorities cited Elliott's Appellate Procedure, sections 25, 26. If it were otherwise, there would be no organ of government capable of authoritatively and finally settling judicial questions; and that there must be such an organ, there can be no doubt, for the judicial department is an independent one, and the element of sovereignty delegated to that department, must, as in the case of the executive and legislative, reside, in its last and highest form, in one tribunal, one officer, or body of officers; but, while we are clear that no statute can deprive the Supreme Court of its rank as the highest and ultimate repository of judicial power, we are equally clear that appellate jurisdiction of an inferior grade may be conferred upon other appellate tribunals. The Legislature can not, under the guise of conferring inferior appellate jurisdiction upon other tribunals, grant them unlimited appellate jurisdiction; but it may grant such tribunals appellate jurisdiction by limiting it to classes of cases not of the highest grade, and restricting its authority to appeals from recoveries of a limited nature. We have no doubt that the statute creating the Appellate Court is valid, for the reason that it so limits the

jurisdiction of that tribunal as to prevent it from equaling in authority the Supreme Court of the State.

The contention of the appellee's counsel that the act creating the Appellate Court is unconstitutional in so far as it regulates practice in the courts by providing for the transfer of cases from one docket to the other, because such a provision is special legislation upon a subject where general legislation is required by the Constitution, can not prevail. We freely grant that if the legislation is to be regarded as special, the conclusion 'of counsel would be correct, for the Constitution requires that the practice of the courts shall be regulated by general laws, but we are clear that the legislation can not be regarded as special. The statute makes a general classification of cases, and the classification is not in any sense such as justifies the conclusion that it singles out particular cases; so that the provisions of the Constitution requiring laws requiring the practice in the courts of the State to be general are not impinged or violated. We are referred by counsel to the case of the *Madison, etc., R. R. Co.* v. *Whiteneck*, 8 Ind. 217, wherein it was held that a statutory provision inflicting a penalty upon railroad companies, in case of a failure to reduce a judgment from which an appeal was prosecuted, was unconstitutional. Assuming that the doctrine of the case is sound, we deny that it governs the present question. The statute creating the Appellate Court does not apply to one class of litigants, as did the statute overthrown in the case cited; it applies to all litigants, and makes no attempt to classify by individuals or parties. The basis of the system of classification is the difference in classes of cases, and not in the situation of parties or persons. The statute is general and uniform, inasmuch as it makes a general classification, and operates uniformly upon all the classes included in the system adopted. *Hancock* v. *Yaden*, 121 Ind. 366; *State* v. *Loomis*, 46 Neb. L. J. 488. If the position of appellee's counsel is correct, it

would be impossible to give one court jurisdiction of general classes of cases and another court jurisdiction of other classes; and the result would be that the Criminal Courts, Superior Courts, courts of justices of the peace, and the like, would be wholly illegal. Such a result, it is evident, was not for a moment contemplated by the framers of our Constitution.

The provisions of the statute creating the Appellate Court, and authorizing the transfer to that court of cases appealed to this court prior to its enactment, are valid. There is no vested right in a remedy or in a tribunal. Remedies and tribunals may be changed by substitution without impairing vested rights. It may be granted that a remedy can not be entirely swept away or rendered utterly ineffective by the destruction of a tribunal, but granting this will not authorize the conclusion that the substitution of the Appellate Court for the Supreme Court, in a class of cases falling within a limited jurisdiction, impairs a vested right, for the parties have still a remedy and still a competent tribunal to administer that remedy. There is no necessity for deciding how far the Legislature may go in destroying judicial tribunals, for here the Appellate Court is a legal tribunal in which all appeals over which it is given jurisdiction may be heard and determined; so that there is neither a complete destruction of a remedy, nor the utter annihilation of a tribunal for the administration of the remedy.

The provisions of the statute empowering the Appellate Court to transfer cases to the docket of this court, when ascertained to be within its jurisdiction, are valid; and so are the provisions of the statute empowering this court to transfer cases from its docket to that of the Appellate Court. It is true that the judgment or order of the Appellate Court can not conclude the higher court upon a question of its own jurisdiction, but this does not affect the validity of the general provisions concerning the transfer

of cases. It is also true that the Legislature must define the jurisdiction of the Appellate Court, for that is a legislative power which can not be delegated. Where, however, the jurisdiction is defined by statute, the determination and designation of what cases fall within the respective jurisdiction of the two courts is purely a judicial act. As jurisdiction comes from the law there must, of necessity, be a law defining it, but where there is such a law the duty of determining where cases belong is one that the courts must perform.

We agree with the appellant's counsel, that if the title to real estate is in question, the jurisdiction is in this tribunal. This court is the chief repository of appellate jurisdiction, and cases not expressly, or by clear implication, placed within the jurisdiction of the Appellate Court, remain in the original and chief repository of appellate jurisdiction. See authorities cited Elliott's Appellate Procedure, sections 34, 47. The statute creating the Appellate Court expressly designates the classes of appeals of which it is given jurisdiction, and this express mention excludes implication. "The express mention of one thing implies the exclusion of others," is here the ruling maxim. We are also of the opinion that where the title to land is directly and necessarily involved, it constitutes the principal element of the case, and that the principal carries with it all incidents; so that, if the title to land is necessarily and directly involved in the case, the jurisdiction is in the Supreme Court, although there may be nothing more than a mere money recovery. See Elliott's Appellate Procedure, section 40, n. 1. *Ibid*, sections 36, 37 and notes. But where there is, on the face of the record, a simple judgment for money, and no specific decree, or no order affecting the title to real estate, the case *prima facie* falls within the jurisdiction of the Appellate Court, and there it must go, unless it appears from the record that the title to real estate is so directly in issue as to constitute the principal and

controlling element in the case. If the question of title is a mere incidental matter, and there is no decree or no judgment affirming title to be in one of the parties, or denying it to be in one of them, the jurisdiction is not in this court where the recovery is for money only and the amount does not exceed one thousand dollars. See authorities cited Elliott's Appellate Procedure, section 58; *Harris* v. *Howe*, 129 Ind. 72.

As effective a practical test as can be found is supplied by the answer to the question: Is the effect of the judgment appealed from such as to divest one of the parties of title or to invest one of them with title? It is manifest that if the issues and judgment are of such a character as to settle the question of title and enable the parties to make use of the judgment as the basis of a plea of *res adjudicata*, in a controversy concerning the title, that jurisdiction is in this court; but it is equally evident that where the judgment can not be regarded as conclusively adjudicating the question of title, jurisdiction is in the Appellate Court, although the question of title may be incidentally or indirectly involved; provided, of course, there is a simple money recovery not exceeding the limit designated by the statute.

It is necessary to apply the general principles we have stated to this particular case, and, as most often happens, there is more difficulty in the application of the principles than there is in ascertaining and announcing the principles themselves. To make the application of the principles enunciated, it is essential to exhibit, with some particularity, the result of our analysis of the record and briefs of counsel; and we begin this work by saying that the judgment is vested upon a special verdict, wherein many deeds are contained, but which appellant's counsel affirm is insufficient, for the reason that it does not state facts showing title to the land described in it to be in the appellee, and they also assert that the evidence does not support the

averment of the complaint that the appellee is the owner of the land which the controversy concerns. They quote, in their brief on the question of jurisdiction, from the special verdict the following finding:

"The plaintiff and his successive grantors have had the actual, visible and continuous occupancy and possession of said mill, mill-race, mill-dam and appurtenance, adversely to all claims of other parties whatsoever, for a period of more than twenty years next before the commencement of this suit. They also refer to a finding contained in the verdict, "that the defendant did not, at the time of the commencement of the suit, own any part of the mill, race, dam or appurtenances." They further direct attention to the fact that in the first paragraph of the complaint it is alleged that the plaintiff is the owner, and in possession of the land in controversy; and they also direct to the allegations in the fourth paragraph of the complaint, that the plaintiff, through the deeds therein set forth, "became the owner of the lands, mill-seat, and mill-race therein; and, also, to the averments concerning title by possession or limitation, described." The appellee's counsel contend that the first paragraph does not put in issue the ownership of the land, and that the allegation of ownership is satisfied by evidence of a possessory right. Of the fourth paragraph it is said that it pleads simply a prescriptive right, but it is elsewhere stated that facts are specifically pleaded showing title by possession, and is argued that title in incorporeal property may be acquired in fee, and in support of this proposition we are referred to Cooley's Blackst., vol. 1, top p. 105; 1 Washburn on Real Property (5th ed.), top p. 87.

Appellant's counsel assert that the law is that where a case is tried upon a definite theory, that theory must be adhered to on appeal, and they refer us to Elliott's Appellate Procedure, sections 489, 490, 491. *Chicago, etc., R. R. Co.* v. *Bills,* 104 Ind. 13; *May* v. *Reed,* 125 Ind. 199; *Pearson* v.

*Pearson*, 125 Ind. 341; *Feder* v. *Field*, 117 Ind. 386; *First National Bank* v. *Root*, 107 Ind. 224 (228); *Western Union Tel. Co.* v. *Reed*, 96 Ind. 195; *Mescall* v. *Tully*, 91 Ind. 96; *Crabb* v. *Orth*, 133 Ind. 11. The law upon this point undoubtedly is as the appellants assert it to be, for it is so declared in many other cases besides those cited. If title can be put in issue in such an action as this, it was undoubtedly here put in issue, inasmuch as the complaint not only specifically asserts title in the plaintiff, but denies that the defendant has title. The findings contained in the special verdict clearly show that the parties construed the pleadings as putting title in issue, and that construction must prevail in this court. See authorities cited Elliott's Appellate Procedure, section 494, note 2. The appellee asked judgment upon the verdict, and, as that asserted title in him, he necessarily demanded judgment upon the theory that he was the owner of the land. We can see no escape from the conclusion that the plaintiff acted throughout upon the theory that he owned the land, and that he construed his complaint as putting title in issue. As this was the effect of his acts, we must adjudge that, if the case is one in which title could be put in issue, it was put in issue and tried.

Before we enter upon an examination of the question as to whether title can be put in issue in such a case as this, we think it proper to consider the argument of appellee's counsel, based upon the proposition that it was not necessary to put the title in issue. We have no doubt that counsel are right in asserting that it was not necessary to put the title in issue, but this does not warrant the conclusion that the title was not put in issue and tried. A party may not be bound to put title in issue, and yet he may voluntarily make it an issue in the case. This rule has been again and again applied in partition proceedings, for while it is not necessary to put the title in issue in such proceedings, a party may elect to put it in issue, and if he

Branson *v.* Studabaker.

does so elect, title may be tried and a conclusive judgment rendered. *Robertson* v. *Van Cleave*, 129 Ind. 217 (230); *Hawkins* v. *Taylor*, 128 Ind. 431, and cases cited; *Powers* v. *Nesbit*, 127 Ind. 497 (498); *Luntz* v. *Greve*, 102 Ind. 173, and cases cited; *Woolery* v. *Grayson*, 110 Ind. 149; *Spencer* v. *McGonagle*, 107 Ind. 410. So in actions concerning personal property, a party is not obliged to put the question of ownership in issue, but he may do so if he elects, and if he does put it in issue the judgment is conclusive upon that question. *Smith* v. *Mosby*, 98 Ind. 445; *McFadden* v. *Fritz*, 110 Ind. 1. It is doubtful whether the appellee is not precluded from asserting that the title could not be put in issue in this case since he did at least do all he could to put it in issue, and, by the theory acted upon in the trial court, he assumed that it was in issue; but as the question whether title to land can be put in issue in such a case as this is important in its influence upon another branch of this case, we here consider it.

In order to understand the question whether title can be put in issue in this case, it is necessary to give a somewhat fuller outline of the case, although it is not necessary to repeat all the allegations of the complaint concerning the ownership of the land. The first paragraph of the complaint, after the allegations of ownership in the plaintiff, charges that the defendant unlawfully and knowingly permitted his hogs and cattle to break and enter upon the land "and injure the mill-race." The fourth paragraph sets forth a deed executed to the appellee by Seaman and another, and, also, a deed from Mary Shaw and her husband, and avers that "by said deeds, together with the facts and deeds hereinafter stated, the plaintiff became the owner of the land in fee simple, and is now the owner thereof." This averment is followed by other deeds, extending over a period of more than forty years, and by allegations that the remote grantors took and held continuous possession of the land involved in this controversy. The allegations concerning the trespass by the

hogs and cattle of the defendant are, in substance, the same as those of the first paragraph. Our judgment is that title can be put in issue in such a case as this, although it may not be necessary to put it in issue, as a possessory right is sufficient to maintain trespass. The action is substantially what was known under the common law practice as trespass *quare clausum fregit*, and in that action title was not necessarily in issue, but it might, as the weight of authority declares, be put in issue if the parties so elected. There is, however, some conflict upon the question where the common law practice prevails, but under the code practice, where facts must be averred and fictions are excluded, the reason for holding that title may be put in issue is clearer and stronger than under the common law system, where fictions were recognized, forms slavishly adhered to, and judgments in ejectment not conclusive upon questions of title. Our code is principally built up of equity doctrines, and its object is to compel parties to plead the facts. Where facts are pleaded, they give character to the issue, make it real and not formal, and require a judgment upon verdicts according to the real facts therein stated, whenever such facts are within the issues. *Boots* v. *Canine*, 94 Ind. 408 (414), and authorities cited. As said in *Shinloub* v. *Ammerman*, 7 Ind. 347: "The spirit of the code is, that the parties shall place upon the record, in the form of averments, the real facts of the case, eschewing all fictions and repetitions." The many authorities cited in *Boots* v. *Canine*, *supra*, leave no room to doubt that the code system so far incorporates the equity doctrines as to require parties to state the facts and to hold them to their averments as statements of the real facts upon which they place their right of action. It is upon this principle that it has been repeatedly held by our own and other courts that statements in the pleadings of parties are admissible in evidence, as were statements in the pleadings in suits in equity. *Boots* v. *Canine*, *supra*, and au-

thorities cited; *Tobin* v. *Young,* 124 Ind. 507 (514); *Louis-ville, etc., R. W. Co.* v. *Hubbard,* 116 Ind. 193 (197); *Cox* v. *Ratcliffe,* 105 Ind. 374 (379). But the rule at common law, as declared by many authors and courts, was that where title was appropriately put in issue it might be litigated, although the action might have been maintained upon a mere possessory right. It is said in one of the text-books that "at common law trespass is not properly an action to try titles, and the question of titles does not necessarily arise, but it may do so when the ownership of the premises is in dispute." The same author also says: "Yet the title may be litigated as a matter directly involved in the issue, and when the question is adjudicated and a judgment rendered in this form of action by a court of competent jurisdiction, the judgment will conclude the parties and operate as an estoppel if the matter appears on the face of the record, or as evidence conclusive in relation to the title, in any subsequent litigation of the matter between them." 2 Waterman on Trespass, 564 (565). Many courts have recognized and enforced the general doctrine stated by the author from whom we have quoted, but we deem it unnecessary to cite cases outside of our reports, for we regard the general question as conclusively settled by our own decisions. In the case of *State* v. *Newton,* 5 Blackf. 455, it was said, in speaking of an action of trespass, that, 'although the title may come in question, it is not essential to an action of this kind that it should.' A somewhat more explicit recognition of the rule was given in the case of *Parker* v. *Bussell,* 3 Blackf. 441, where it was said, in illustration of the position of the court, that the fact that damages only were sought furnished no reason for holding that title to real estate could not be put in issue, that, "we will take, for instance, the action of trespass *quare clausum fregit,* and injuries done to land, such an action does not of itself bring the title of land in question; for the defendant may admit the title of the land to

be in the plaintiff, but may deny the trespass. But if he plead *liberum tenementum*, then the title to the land must come in question." In *Campbell* v. *Cross*, 39 Ind. 155, it was decided that title might be put in issue in an action to recover damages for a trespass to lands, and that an answer pleading a judgment in such an action as a former recovery was good, because it showed an adjudication upon the question of title. The court said, among other things, that "here was an adjudication as to the title of the property by which the parties are bound. We shall not range through all the authorities on this point. They are numerous. It will be sufficient to cite one or two. In the case of *Outram* v. *Morewood*, 3 East, 345, it was decided that 'if a verdict be founded on any fact or title distinctly put in issue in an action of trespass, such verdict may be pleaded by way of estoppel in another action between the same parties or privies in respect of the same fact or title.'" The court also cited, as sustaining its decision, *Doty* v. *Brown*, 4 N. Y. 71; and *Hargus* v. *Goodman*, 12 Ind. 629. There are other cases in our reports asserting the same general doctrine, but we can not prolong this opinion by commenting upon them, and cite them without comment: *Dixon* v. *Hill*, 8 Ind. 147; *Anderson* v. *Buchanan*, 8 Ind. 132; *Burnett* v. *Coffin*, 4 Ind. 218; *Cromwell* v. *Lowe*, 14 Ind. 234; *Wolcott* v. *Wigton*, 7 Ind. 44; *Smith* v. *Cronkhite*, 8 Ind. 134. These cases are in line with the cases already referred to, which hold that title may be put in issue in partition proceedings and in actions of replevin, and, when put in issue, the adjudication upon it is conclusive.

Our ultimate conclusion upon this branch of the case is that the appellee did put the title in issue by the specific statements of title in the fourth paragraph of his complaint; that the special verdict shows, upon its face, that the finding rests on the specific averments of title, and, as the record thus shows, that title was in issue, and was passed upon, the jurisdiction is in this court.

As we have adjudged that title was in issue, and is shown by the special verdict to have been passed upon and determined by the jury, we affirm the correctness of the appellant's theory in that regard, and it remains for us to inquire and decide whether counsel's contention, based upon the theory that there are prejudicial errors in the record, can be sustained.

The position of counsel that the special verdict is bad, because it does not embrace all the issues, is untenable.    If the assumption that the verdict does not cover all the issues be conceded to be valid, the conclusion deduced would not follow.    It is the rule in this State, and long has been, that a special verdict is not bad as against a motion for a *venire de novo*, although it may not embrace all the issues.    There has been some conflict and wavering upon this question, but the authoritative decisions all assert the rule as we have stated it.    See authorities cited Elliott's Appellate Procedure, section 759.    It is well settled that a motion for a *venire de novo* lies only where the verdict upon its face appears to be defective in form; where it is against the evidence, or does not state a fact which the party believes the evidence establishes, the remedy is by a motion for a new trial.    *Young* v. *Berger*, 32 N. E. R. 318, and authorities cited. Where the facts stated entitle a party to judgment, the proper mode of procedure is by a motion for judgment; or, if the motion of the adverse party for judgment is sustained, the question of the sufficiency of the facts to support a judgment may be saved by a proper exception.    See authorities cited Elliott's Appellate Procedure, sections 753, 754; *Austin* v. *Earhart*, 88 Ind. 182; *Dixon* v. *Duke*, 85 Ind. 434; *Johnson* v. *Culver*, 116 Ind. 278 (280).    We do not doubt the correctness of appellant's position that where damages only are recoverable the damages must be stated, or such facts stated as leave nothing for the court to do except to make a mere mathematical computation; but the

basis of fact essential to the support of the appellant's position is entirely wanting, inasmuch as the special verdict does assess the damages. It is true that the assessment is in the alternative; this is, however, the usual and appropriate method of stating the assessment in special verdicts; but the rule of law invoked by the appellant would not apply if there was no assessment of damages; for, according to counsel's theory, as appears from our references to their brief made on the preceding pages, there is a finding upon the question of title, and hence it follows that, by the appellant's own theory, there was a finding sufficient to sustain a judgment.

Our code requires that a judgment shall follow the verdict, but the failure to follow a verdict in rendering judgment is, plainly enough, no cause for a *venire de novo*. A failure to follow the verdict is not a cause for a *venire de novo*, nor is it a cause for a new trial, although it may be a sufficient ground for a motion to modify the judgment.

The decisions fully sustain the general rule asserted by appellant's counsel, that special verdicts must state ultimate facts and not conclusions of law or mere matters of evidence; but it is equally well settled that if sufficient facts to support a judgment are stated, the presence of conclusions of law or of matters of evidence will not vitiate the verdict.    See authorities cited, Elliott's Appellate Procedure, sections 753, 757.    *Terre Haute, etc., R. R. Co.* v. *Brunker*, 128 Ind. 542; *Faurote* v. *State, ex rel.*, 123 Ind. 6 (9).    In this case our opinion is that all mere matters of evidence may be eliminated and enough remain to sustain a judgment. The elementary and familiar rule is that verdicts are to receive a reasonable construction and not be disregarded if, upon a reasonable construction, they can be sustained. It is quite difficult for the trained lawyer, with ample time and deliberation, to nicely and accurately draw the line between facts and evidence.    There is, it is true, a difference, for facts are the result of proof, and evidence the

means* by which the proof is made.  *Parks* v. *Satterthwaite*, 32 N. E. R. 82.  But there are cases where the dividing lines so shade into each other that it is quite difficult to trace them under any circumstances, and where the hurry and excitement of a trial are pressing upon counsel they can not be expected to be entirely and absolutely accurate in preparing special verdicts in all cases.  It is evident that if the rule upon the subject of special verdicts was very illiberal or extremely strict, few verdicts would stand; and yet, in justice, all ought to stand, unless it clearly appears that material facts are absent.  Facts may be clouded and obscured by improper matters or surplusage, but if they are actually in the verdict, judgment should, nevertheless, be given upon it.  We are satisfied that the statements in the special verdict before us regarding title can not be regarded as mere conclusions or as mere matters of evidence. *Perkins* v. *Hayward*, 124 Ind. 445, and cases cited.  Whether the evidence supports the finding of title in the appellee, is quite a different question, and one that can not be presented by a motion for a *venire de novo*.

Where a special verdict states the general sum as the damages, it is not necessarily bad on a motion for a *venire de novo*, although the specific facts stated may not, in law, entitle the successful party to the damages specified in the general statement; for, where specific facts are stated, clearly enabling the court to fix the amount of the recovery, the appropriate judgment may be entered on the specific facts.  The decisions in *Baughan* v. *Baughan*, 114 Ind. 73, and *Carver* v. *Carver*, 83 Ind. 368, can not rule where specific facts of a controlling nature appear in the verdict; but in this instance a *remittitur* was entered, so that, if the general assessment was not warranted by the specific facts, no harm was done, and there can be no reversal.  Intermediate errors will not reverse where the ultimate judgment is right.  Authorities cited Elliott's Appellate Procedure, sections 590, 633.

Title in fee may be acquired by possession ; it is, indeed, true that title acquired by limitation is always in fee. *Roots* v. *Beck*, 109 Ind. 472, and authorities cited ; *Wilson* v. *Brookshire*, 126 Ind. 497. In the case of *Sims* v. *City of Frankfort*, 79 Ind. 446 (449), the court adopted the statement of Professor Washburn, made respecting the acquisition of title by limitation, that " It should be clearly understood that the title thereby acquired is, and must be, if anything, a fee." A fee may exist in an incorporeal hereditament, and may, of course, under this principle, exist in an easement. 1 Washburn on Real Property (5th ed.), top, p. 87. The general doctrine stated is recognized in the case of *Water Works Co.* v. *Burkhart*, 41 Ind. 364, and the cases following it ; *Nelson* v. *Fleming*, 56 Ind. 310 ; *Cromie* v. *Board, etc.*, 71 Ind. 208 ; *Brookville, etc., Co.* v. *Butler*, 91 Ind. 134 ; *Shirk* v. *Board*, 106 Ind. 573 ; *Frank* v. *Evansville, etc., R. R. Co.*, 111 Ind. 132. The facts contained in the special verdict make the case a much clearer and plainer one than that of *Water Works Co.* v. *Burkhart, supra,* for here there was an acquisition of title by contract, while in that case the title of the original owner was wrested from him by condemnation proceedings. We do not affirm that the line of cases referred to are precisely in point upon all the questions in this case, but we do affirm that they necessarily, and by clear implication, establish the general principle that a fee may exist in an easement. In *Burk* v. *Simonson*, 104 Ind. 173, the existence of a perpetual right in an easement was clearly recognized. But we can not, independently of these cases, hold that there may not be a fee in an easement without, as we have seen, running counter to elementary principles. Nor is there anything novel or strange in the doctrine that there may be a fee in an easement, for an easement is an estate in land. *Snowden* v. *Wilas*, 19 Ind. 10 ; *Hazlett* v. *Sinclair*, 76 Ind. 488 (494) ; *Scott* v. *Stetler*, 128 Ind. 385 ; *Midland R. W. Co.* v. *Fisher*, 125 Ind. 19, and cases cited. All easements are

·estates in land. A fee may exist in all estates in land; therefore, a fee may exist in an easement.

Assuming, for the sake of the argument, that the appellant's counsel are correct in their contention that there is no specific description or designation in the deed of the land covered by the mill-race in the first Miller deed, still, it will not follow that no right of ownership vested, for where a deed conveys an estate in property, it conveys everything essential to the enjoyment of the estate, or property granted. In *Sheets* v. *Selden's lessee,* 2 Wall. 177, the Supreme Court of the United States thus stated the law :

" The objection that the deed does not cover the premises in controversy rests upon the fact that it does not convey the parcels of land, for which the action is brought, by ·specific designation and description. Such designation and ·description, though usual, are not always essential. Land will often pass by other terms. Thus, the grant of a messuage, or a messuage with appurtenances, will carry the dwelling-house and buildings, and, also, its orchard, garden and curtilage. The true rule on the subject is this: That everything essential to the beneficial use and enjoyment of the property designated is, in the absence of language indicating a different intention on the part of the grantor, to be considered as passing by the grant. Thus, the devise of a mill and its appurtenances was held by Mr. Justice Story to pass to the devisee, not merely the building, but all the land under the mill and necessary for its use, and commonly used with it."

Other illustrations are given by the court, and the following authorities are cited and approved: Shepherd's Touchstone, 94; *Sparks* v. *Hess,* 15 Cal. 186; *Whitney* v. *Olney,* 3 Mason C. C. 289; *Wise* v. *Wheeler,* 6 Ired. 196; *Blaine* v. *Chambers,* 1 S. & R. (Pa.) 169. We add to the cases collected by the court in *Sheets* v. *Selden, supra,* the following: *Mixer* v. *Reed,* 25 Vt. 254; *Johnson* v. *Raynor,* 6 Gray 107; *Cook* v. *Whiting,* 16 Ill. 481; *Brackett* v. *God-*

*dard,* 54 Me. 313. Our own case of *Kenworthy* v. *Tullis,* 3 Ind. 96, is quite as strong in its assertion of the general doctrine stated in *Sheets* v. *Selden, supra,* as any of the cases to which we have referred. It is clear upon principle and authority that, by granting a mill-race, a mill, or the like, a grant of the land forming an essential part of the thing granted is conveyed, although there may be no specific designation or description of the particular parcel or quantity of land occupied or covered by the mill or race.

In the deed to which we have referred, executed on the 17th day of August, 1840, Miller conveyed to " William Maurie, his heirs, and assigns forever, all that certain tract or parcel of land and water privileges lying and being in the county of Randolph." Immediately following the language quoted is a specific description of a parcel of land, and following the specific description is this language: "Said piece of land is to be for a site for the purpose of erecting a new mill, to be propelled by water coming through the before-mentioned race, and said Maurie is to have the privilege of widening said race if necessary, but not to make unnecessary waste of land along said race, and to have the privilege of cleaning and of keeping said race in repair at any time. The said Peter S. Miller to have the privilege of passing and repassing over said race at any time and at all times, and to have the privilege of putting his fences on the race bank if necessary. The said William R. Maurie is to have the wheels, stones, and fixtures in the old mill-house; also, to have and to hold the appurtenances thereunto belonging, and the reversions, remainders and profits thereof, and all the estate of the said Peter S. Miller in and to the same."

It seems quite clear to us that the deed vested in the grantee a fee in all the property mentioned. The clause "all that certain parcel or tract of land and water privileges," taken in connection with the other language of the deed,

clearly means that the grantor conveys land for a mill-site and mill-race, together with the privilege of using water. Under the authorities to which we have referred, the clause quoted, standing alone, would carry the land covered by the mill-race; for it is manifest that whatever was conveyed, besides mere water privileges, was land. The mill-site and land necessary to the existence and operation of a mill were designated as land, and as land conveyed. But the language in other parts of the deed makes the meaning entirely free from doubt. If the land covered by the race was not conveyed, there is no meaning in the provisions reserving to the grantor the right "of passing and repassing over said race," and "to have the privilege of putting his fences on the race-bank if necessary." If the fee remained in Miller, he would have possessed these rights without any mention or reservation in the deed. See authorities cited in Elliott on Roads and Streets, 308 (518). The entire conveying part of the deed bears upon its face an intention to pass the mill-site, mill-race, and the like, as corporeal property, and we can not assent to the appellant's contention that, so far as the race is concerned, a mere privilege to convey water through it is granted. Our judgment is that the land needed for a race was conveyed, and, in addition to the land, water privileges necessary to operate the mill were granted. The conveying part of the deed can not be dissevered into fragments, and part of the property treated as corporeal and part as incorporeal, except such as is included within the words "water privileges," for all the other words appropriately designate land. In *Kenworthy* v. *Tullis, supra,* the language of the deed was less explicit than in the one we are considering, and yet it was held that the deed conveyed a fee. It was necessary to decide the question as to the construction of the deed in that case, and it was decided. Under our decisions, if there are apt words of conveyance in a deed, no matter where, they

are effective. *Hummelman* v. *Mounts*, 87 Ind. 178. The decision in the case of *Wickersham* v. *Bills*, 8 Ind. 387, supports the doctrine just stated, and declares a conclusion very similar to that declared in *Kenworthy* v. *Tullis, supra.*

If we are right in our construction of the first deed executed by Miller, then other deeds granting other privileges, confirming those previously granted, or granting other property, can not cut down the estate conveyed by the original deed. If a grantee once rightfully acquires an estate in fee, it remains in him unless he subsequently divests himself of title. He may accept deeds strengthening his title or augmenting appertaining privileges without losing title once fully vested. Here there is no element of estoppel nor any conveyance, but, on the contrary, operating against the appellee, there is continuous and uninterrupted possession for more than twenty years under a deed assuming to convey land, so that we can see no possible reason for asserting that the grantee had lost his estate in fee.

Our ultimate conclusion is that whatever view may be taken of this case, whether the fee be held to have been created by deed, or to have been created by limitation, the law of the case and the merits are with the appellee.

Judgment affirmed.

Filed December 20, 1892.